BABA *v.* MUTUAL BENEFIT HEALTH & ACCIDENT ASSN.

1. EVIDENCE—PHYSICAL FACTS—CREDIBILITY—INSURANCE.
   In action by widow, as beneficiary, on accident insurance policy, testimony of son that while he was sitting in car his father slipped and fell on one knee while cranking the car when contradicted by physical fact that front of car obscured son's vision *held*, to render credibility of son's testimony for jury.

2. APPEAL AND ERROR—SPECIAL QUESTIONS—FINDINGS OF JURY.
   Findings of fact by jury will not be disturbed where there is testimony to support such findings except when the verdict is against the great weight of the evidence.

3. INSURANCE—ACCIDENT—CAUSE OF DEATH.
   In action on policy insuring against death through purely accidental means, whether insured died as result of accident or from natural causes *held*, for jury.

4. SAME—PROOFS OF LOSS—PURPOSE.
   Requirement of standard provision in accident insurance policy that insurer be furnished with proof of the occurrence, character and extent of loss for which claim is made is to enable insurer to form an intelligent estimate of its rights and liabilities.

5. SAME—ACCIDENT POLICY—NOTICE OF DEATH.
   Under accident insurance policy requirement that notice of death be filed, where beneficiary gave notice that it had occurred from heart disease and failed to correct or supplement such notice so that it would appear that the event upon which insurer's liability depended had occurred, recovery by beneficiary as for accidental death *held*, precluded.

(531)

6. SAME—NOTICE OF DEATH—PROOF OF LOSS—WAIVER.

Record in action on accident insurance policy *held*, to fail to show insurer waived requirement as to proof of loss by assurance of local agent he would take care of everything, by failure of insurer to furnish forms within 15 days and by claimed directions of State manager given during a telephone conversation that beneficiary see local manager, where only written notice of death given insurer indicated that insured died as result of heart disease.

Appeal from Oakland; Hartrick (George B.), J. Submitted April 8, 1937. (Docket No. 23, Calendar No. 39,352.) Decided June 8, 1937.

Assumpsit by Pauline Baba against Mutual Benefit Health & Accident Association on an accident insurance policy. Verdict for plaintiff on special questions. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Affirmed.

*Sol Blumrosen* and *Chester Schwartz*, for plaintiff.

*Lightner, Crawford, Sweeney, Dodd & Toohy* (*Clifford M. Toohy* and *George D. Haller*, of counsel), for defendant.

CHANDLER, J. In a suit on a policy of insurance, defendant had judgment *non obstante veredicto*. Plaintiff appeals.

Plaintiff is the widow of Nick Baba, deceased, and is also the beneficiary under an insurance policy issued to said deceased insuring deceased "against loss of life * * * resulting directly and independently of all other causes, from bodily injuries sustained during any term of this policy, through purely accidental means." The policy contained

the usual standard provisions, those pertinent to a determination of this cause being as follows:

"4. * * * In event of accidental death immediate notice thereof must be given to the association.

"5. Such notice given by or in behalf of the insured or beneficiary, as the case may be, to the association at Omaha, Nebraska, or to any authorized agent of the association, * * * shall be deemed to be notice to the association. Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible.

"6. The association upon receipt of such notice, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not so furnished within 15 days after the receipt of such notice the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made.

"7. Affirmative proof of loss must be furnished to the association at its said office in case of claim for loss of time from disability within 90 days after the termination of the period for which the association is liable, and in case of claim for any other loss, within 90 days after the date of such loss."

On June 4, 1934, the deceased, accompanied by his son, Julius, left home for his work at the Pontiac Motor Car Company. Before arriving at their destination the motor of the car in which they were riding became stalled. Julius testified that his father got out of the car and attempted to start the motor by cranking; that while his father did so, he, Julius, remained seated in the car to operate the ignition in

the event that the motor should start; that deceased went to the front of the car and while engaged in cranking the motor his foot slipped and he fell to his knee; that he placed his hand to his chest in a position over the heart, groaned and appeared to be short of breath; that he then got back into the car, rested a few minutes and proceeded to walk the balance of the way to work, leaving Julius with the car which had refused to start.

A fellow workman of the deceased saw deceased as he entered the gates of the Pontiac plant and noted that he was gasping for breath. Shortly thereafter deceased was found unconscious and was pronounced dead upon examination a few moments later.

Defendant contends there was no evidence to go to the jury that deceased sustained an accident. If the testimony of the son, Julius, is to be believed, it would appear that plaintiff had sustained the burden of proof in this regard. Defendant bases its contention on the argument that because deceased was a short man and the son admitted he could only see that portion of deceased above the chest while he was in front of the car cranking the motor, it was impossible for the son to observe as to whether his father had slipped and fallen to his knee. In other words, defendant contends that the testimony as to the happening of an accident is to be discredited as being in contradiction to the physical facts. The trial court was persuaded by this argument. We are, however, disposed to believe upon examination of all of the testimony that it was within the province of the jury to determine the credibility of the witness, Julius, and for it to determine whether or not the facts related by him did or did not occur.

The testimony was conflicting as to whether or not the death resulted ''directly and independently of all other causes, from bodily injuries sustained * * * through purely accidental means'' or whether deceased died from natural causes. The following special questions were submitted to the jury:

1. ''Did Nick Baba lose his life from bodily injuries, independently and exclusively of disease and all other causes causing his death?''

2. ''Did Nick Baba die a natural death from natural causes rather than accidental causes?''

The jury answered question No. 1 in the affirmative and question No. 2 in the negative. The findings of the jury upon disputed questions of fact will not be disturbed where there is testimony to support such findings, except when the verdict is against the great weight of the evidence.

Plaintiff testified that on June 4, 1934, the date of her husband's death, she called the Detroit office of the defendant company by telephone and conversed with a man, unidentified by name, who she claims stated he was the manager; that she requested information as to whether the premiums were paid to date on the policy and stated that her husband passed away in an accident. She further testified that the party with whom she was speaking informed her to discuss the matter with the Pontiac agent and ''send that certificate to the home office.'' The defendant's Detroit manager denied any such conversation in its entirety. The son, Julius, claimed to have been present during the conversation and testified as to statements made by plaintiff over the phone at the time, his testimony being substantially the same as that of plaintiff with the ex-

ception that according to him more details concerning the alleged accident were then related by plaintiff. He further testified that a few days after decedent's death he talked with the Pontiac agent and discussed the circumstances surrounding the death. This agent, also unidentified by name, is claimed to have stated that "he would take care of everything."

On August 2, 1934, plaintiff wrote to defendant's home office in which she stated, "I am notifying you of my husband's death on June 4, 1934," inclosing with said letter a coroner's certificate reading in part, "The cause of death was acute mitral endocarditis (contributory cause excessive heat)." Acute mitral endocarditis was explained by one physician as being an acute inflammation of the lining of the heart. Subsequently, forms for making proof of loss in compliance with provision 6, hereinbefore quoted, were mailed to plaintiff but never completed and returned to defendant by her. On August 30, 1934, she wrote to defendant as follows: "In regard to your last letter I received with applications to be filled out. The only person who filled one was the coroner. There was no doctor attention because his death was sudden." On September 11, 1934, defendant by letter to plaintiff stated:

"The file in connection with the claim for last illness of Mr. Baba has been referred to our committee for their consideration, and they have pointed out to us that no disability was suffered by Mr. Baba for one day or more, consequently there would be no benefits due under the contract for the claim filed.

"In any event, it appears that Mr. Baba died of a heart disease, and his contract had not been in force continuously for the six preceding months, so there would be no liability, in accordance with the additional provisions of the contract."

It is apparent from this letter that defendant considered the claim as one for disability resulting from heart disease or natural causes.

Assuming the alleged conversations of plaintiff with defendant's Detroit manager and that of her son with the Pontiac agent establish compliance with the policy provision 4 requiring immediate notice of death, and that because of the failure thereafter of defendant to furnish promptly the necessary forms for proof of loss within 15 days as provided by provision 6, proof of loss on such forms was waived, we are confronted with the question as to whether plaintiff otherwise furnished such proof as is required by said provision 6. If she did, it must be found in her letters of August 2, and August 30, 1934. We believe this issue to be decisive and one upon which the judgment must be affirmed.

Standard provision 6 requires proof of the occurrence, character and extent of loss for which claim is made. The purpose of the requirement is to enable the insurer to form an intelligent estimate of its rights and liabilities. *Griffin* v. *Northwestern Mutual Life Ins. Co.,* 250 Mich. 185. The liabilities of the defendant depended upon whether the deceased met his death "directly and independently of all other causes, from bodily injuries * * * through purely accidental means." The proof furnished by plaintiff in her letter of August 2, 1934, indicated that deceased had expired from heart disease. No intimation was given that the death had resulted from accidental circumstances, upon which contingency the liability of the defendant was predicated under the terms of the policy. That defendant reasonably believed deceased had died from disease or natural causes is established by its letter of Sep-

tember 11, 1934. Plaintiff's letter of August 30th furnished no additional information. If the proof furnished by plaintiff was erroneously submitted, it was incumbent upon her to correct or supplement the same so that it would appear that the event upon which defendant's liability depended had occurred. This she did not do. Her failure to comply with the plain requirements of the policy precludes her recovery. See *Wachtel* v. *Equitable Life Assurance Society of the United States,* 266 N. Y. 345 (194 N. E. 850).

Plaintiff strenuously urges that defendant waived proof of loss by reason of the assurance of the unnamed Pontiac agent that he would take care of everything, by failure of defendant to furnish the forms within 15 days and by the claimed directions of defendant's State manager given during the telephone conversation to consult the Pontiac agent and "send that certificate to the home office." A careful examination of the record reveals nothing that would constitute a waiver by defendant of the provisions of the policy.

Judgment affirmed, with costs.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and POTTER, JJ., concurred.