**Kathleen A. MISSIG, Plaintiff,**

**v.**

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey corporation, Defendant.**

**Civ. A. No. 83–CV–0600–DT.**

United States District Court, E.D. Michigan, S.D.

Dec. 13, 1983.

John Desrosiers, Grosse Pointe, Mich., for plaintiff.

Stacey J. Lilley, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

FEIKENS, Chief Judge.

Before me is a motion by defendant, Prudential Insurance Company of America (Prudential), for summary judgment in a diversity case removed from state court pursuant to 28 U.S.C. § 1441, and for which jurisdiction lies pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

Terrence Missig, deceased husband of plaintiff Kathleen Missig, was an employee of Modern Engineering Service Company (Modern Engineering). Effective April 1, 1980, Prudential issued a group insurance policy to Modern Engineering. The policy provided that employee benefits would be terminated upon termination of employment. However, one portion of the policy (the life insurance portion) contained an exception to this immediate termination provision. It provided a conversion privilege which allowed terminated employees to convert their group life insurance policies to individual life insurance policies at any time during a 31-day grace period following termination. The policy also provided that life insurance coverage continued throughout the 31-day conversion period regardless of whether an employee eventually elected to convert to an individual policy.

On April 2, 1980, Terrence Missig terminated his employment, and on April 23, 1980, died of arguably accidental causes. On May 1, 1980, Kathleen Missig filed a claim for life insurance benefits, and Prudential thereafter paid her $12,500, plus interest, as payment of such benefits. On January 18, 1983, plaintiff commenced this action claiming that she was entitled to accidental death benefits pursuant to the accidental death and dismemberment portion of the group insurance policy. For reasons stated, I find that plaintiff is not entitled to such benefits, and therefore grant summary judgment in favor of defendant.

## II. DISCUSSION

### A. *The Conversion Privilege*

■ The group life insurance policy in question was issued in two distinct parts: one entitled "Employee Term Life Insurance"; and one entitled "Employee Accidental Death and Dismemberment Insurance". Each of these separate parts is set forth on separate pages of the policy which are clearly captioned as to their respective coverages. The provision for conversion from group coverage to an individual policy is set forth only in the portion of the policy which covers term life insurance. Similarly, the provision which provides coverage during the 31-day conversion period is set forth only in the term life insurance portion of the policy. Moreover, the conversion privilege itself provides that the group policy may be converted to a *life insurance* policy other than one which "... contain[s] disability or other supplementary benefits..."

Notwithstanding the above facts, plaintiff contends that the conversion privilege applies not only to the term life insurance portion of the policy, but also to the accidental death and dismemberment portion of the policy. This argument has arisen before in regard to conversion privileges in policies such as this, and courts are seemingly unanimous in holding that such policies are unambiguous in only allowing conversion (and therefore coverage during the conversion period) of the life insurance portion, and not accidental death or disability portion, of the policies. *Williams v. C.T. Life and Accident Insurance Co.,* 303 F.Supp. 1208 (D.Kan.1968), *aff'd,* 416 F.2d 447 (10th Cir.1969); *Droz v. Paul Revere*

*Life Insurance Co.*, 1 Ariz.App. 581, 405 P.2d 833 (1965); *Shadduck v. The Mutual Benefit Life Insurance Co.*, No. 56209 (Mich.Ct.App. Aug. 20, 1982) (applying Florida Law).

Plaintiff makes a novel argument in order to avoid the apparently clear meaning of the policy. Plaintiff contends that the policy contains the conversion privilege in order to comply with the mandates of the Insurance Code of 1956, which provides:

There shall be a provision that ... to the effect that in case of the termination of the employment for any reason whatsoever the employee shall be entitled to have issued to him by the company, without further evidence of insurability, and upon application made to the company within 31 days after such termination, and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance in any 1 of the forms customarily issued by the company, except term insurance, in an amount equal to the amount of his protection under such group insurance policy at the time of such termination.

M.C.L.A. § 500.4438. Plaintiff goes on to argue that in order to interpret the meaning of the term "a policy of life insurance" as used in M.C.L.A. § 500.4438, I must look to the definitional provisions of the Insurance Code, which provide:

Transaction of life insurance includes the issuance of policies of life and endowment insurance and contracts for the payment of annuities and pure endowments, and contracts supplemental thereto which contain only such provisions relating to accident and sickness insurance as (a) provide additional benefits in case of death or dismemberment or loss of sight by accident, or as (b) operate to safeguard such policies or contracts against lapse or to give a special surrender value or special benefit or an annuity in the event that the insured or annuitant shall become totally and permanently disabled, as defined by the contract or supplemental contract.

M.C.L.A. § 500.602(2). Plaintiff contends that since the above definition includes accidental death benefits as a subgroup of life insurance benefits, the group policy at issue should be interpreted in accordance with that statutory provision, and the conversion privilege should be interpreted as applying to the accidental death portion of the policy.

The definitional provision cited by plaintiff does not purport to define "life insurance"; it defines "Transaction[s] of life insurance". Life insurance is defined in M.C.L.A. § 500.602(1), which simply provides:

"Life" insurance is insurance upon the lives and health of persons and every insurance pertaining thereto, and to grant, purchase or dispose of annuities.

Furthermore, in defining disability insurance, the Code provides: "Disability" insurance is insurance of any person against bodily injury or *death by accident*.... (emphasis added). M.C.L.A. § 500.606. In *Equitable Life Assurance Co. of the United States v. Odle*, 547 S.W.2d 939 (Tenn.1977), the Tennessee Supreme Court was faced with this same issue in the context of a statutory framework substantially identical to that in the instant case. The court noted that accidental death insurance falls squarely within the definition of disability insurance, rather than life insurance, and concluded that conversion privileges for life insurance do not apply to accidental death insurance.

As did the court in *Equitable Life Assurance*, I find that the statutory requirements with regard to conversion privileges apply only to life insurance, and not to accidental death, dismemberment or disability insurance. In that the policy unambiguously provides that the conversion privilege applies only to the term life policy, and in that M.C.L.A. § 500.4438 does not require otherwise, I find that Terrence Missig was not covered by the group policy at the time of his death on April 23, 1980.

### B. *Notice of Accidental Death*

■ Prudential also argues that, even if the conversion privilege applied to accidental death insurance, plaintiff would not be entitled to benefits for reason of failure to provide notice of the insured's accidental death. The policy requires that written proof of a loss be furnished within 90 days of the loss. The policy also provides that "All benefits will be paid upon receipt of written proof covering the occurrence, character and extent of the event for which claim is made; ..." It is well established that failure to provide notice of accidental death may preclude an insured from collecting benefits under the policy, and that proof of death alone is insufficient to establish a claim for accidental death benefits. *Baba v. Mutual Benefit Health and Accident Assn.,* 280 Mich. 531, 273 N.W. 795 (1937); *Droz v. Paul Revere Life Insurance Co., supra;* 45 C.J.S. Insurance § 987 (1946).

Plaintiff concedes that she did not specifically request accidental death benefits or submit proof of accidental death. Plaintiff seeks to excuse such failure by way of two separate arguments. First, plaintiff contends that she filed a claim for whatever benefits were due her under the life insurance policy. Consistent with plaintiff's contention that accidental death insurance is a subgroup of life insurance, plaintiff contends that she did give the requisite notice by requesting only life insurance benefits. As discussed above, I have concluded that the accidental death coverage was not a subgroup of the life insurance coverage, and thus find this argument to be without merit.

■ Plaintiff's second argument is that any failure of notice is excused by the fact that plaintiff was unable to obtain a copy of the insurance policy until October 7, 1980—some time after the ninety-day notice period had expired. The notice provision of the insurance policy provides: "Failure to furnish such proof within the required time shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible." Thus, even if plaintiff did not receive a copy of the policy until October 7, she was still required to provide notice and proof of accidental death to the insurance company "as soon as reasonably possible" after receiving the policy. As it is, the first notice defendant had of the accidental death claim was the filing of this action, nearly three years after the death of the insured. Such a delay would make it extremely difficult for defendant to investigate the conditions surrounding the insured's death. This is precisely the situation which timely notice requirements are intended to avoid. *Wendel v. Swanberg,* 384 Mich. 468, 185 N.W.2d 348 (1971). A delay of several months in obtaining a copy of the insurance policy will not excuse a delay of nearly three years in notifying the insurer of the loss. Thus, I find that plaintiff's failure to notify defendant of her claim precludes her from recovering benefits under the policy.

### III. CONCLUSION

I find that the insurance policy in question unambiguously provides that the conversion privilege applies only to the term life insurance policy, and that plaintiff is therefore not entitled to accidental death benefits. Moreover, even if plaintiff were otherwise entitled to accidental death benefits, I find that her failure to provide notice of the loss as required under the policy precludes her from recovering benefits. Thus, defendant's motion for summary judgment is GRANTED.

An order, so providing, may be submitted.