Argued and submitted September 1, decision of Court of Appeals affirmed, judgment of circuit court reversed and case remanded to circuit court with instructions October 29, 1992

Randall E. SANDERS,
*Petitioner on Review,*

*v.*

OREGON PACIFIC STATES
INSURANCE COMPANY,
*Respondent on Review.*

(CC 89-08-32835; CA A65627; SC S38847)

840 P2d 87

Roland W. Johnson, of Kirby, Johnson & Chrisman, Enterprise, argued the cause for petitioner on review and filed the petition.

I. Franklin Hunsaker, of Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, argued the cause for respondent on review. With him on the response were Chrys A. Martin and Lori R. Metz.

GRABER, J.

## GRABER, J.

ORS 743.333 provides for the conversion of an employee's group life insurance coverage to individual coverage after the termination of the qualifying employment:

> "A group life insurance policy shall contain a provision that if the insurance, or any portion of it, on a person covered under the policy ceases because of termination of employment or of membership in the class or classes eligible for coverage under the policy, such person shall be entitled to have issued by the insurer, without evidence of insurability, an individual policy of life insurance without disability or other supplementary benefits, provided application for the individual policy shall be made, and the first premium paid to the insurer, within 31 days after such termination * * *."

Plaintiff, the beneficiary of an insured decedent who died within 31 days after the termination of her employment, brought an action against defendant insurance company to compel payment of accidental death benefits. The trial court held that ORS 743.333 required payment of those benefits. The Court of Appeals reversed, holding that the right of conversion created by that statute does not include a right to convert accidental death benefits. *Sanders v. Oregon Pacific States Ins. Co.*, 110 Or App 179, 821 P2d 1119 (1991). We allowed review to answer the question of statutory interpretation raised by the parties. We affirm the decision of the Court of Appeals.

The material facts are stipulated.[1] Plaintiff's daughter was a full-time employee of Albany General Hospital. She was insured under a group life insurance policy issued by defendant for employees of that hospital. The policy included a term life benefit of $10,000 and an additional benefit of $10,000, payable in the event of accidental death. As required by ORS 743.333, the insurance contract provided a right of conversion of the group policy to an individual life insurance policy within 31 days of termination of the insured's eligibility for group coverage.

Plaintiff's daughter left her full-time employment with Albany General Hospital on April 1, 1989. Twelve days

---

[1] The parties submitted this controversy to the trial court pursuant to ORCP 66.

later she was killed in an automobile accident. Plaintiff, her designated beneficiary, made a claim for benefits under the contract.[2] Defendant paid the term life benefit of $10,000 but refused to pay the accidental death benefit. Plaintiff then brought this action to recover the accidental death benefit.

The trial court found that the clause in the group insurance contract, providing for the conversion of life insurance, was ambiguous. Relying on the broad definition of "life insurance" in ORS 731.170,[3] the court interpreted the contract to provide for the conversion of accidental death benefits. The court entered judgment for plaintiff, and defendant appealed. The Court of Appeals reversed, concluding that the insurance contract was not ambiguous and holding that neither the contract nor the relevant statutes required the payment of accidental death benefits. *Sanders v. Oregon Pacific States Ins. Co., supra,* 110 Or App at 183-84.

■ We first consider plaintiff's argument that the insurance contract is ambiguous and that it should, therefore, be construed in favor of the insured to provide accidental death benefits. The contract of insurance includes these definitions:

> " 'Conversion' — the insured may exchange his rights under this policy for an individual policy. *This only applies to*: 1) *term life insurance*; or 2) dependent's life insurance.

---

[2] ORS 743.339 provides:

"A group life insurance policy shall contain a provision that if a person insured under the group policy dies during the period within which the person would have been entitled to have an individual policy issued in accordance with ORS 743.333 or 743.336 and before such an individual policy shall have become effective, the amount of life insurance which the person would have been entitled to have issued under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made."

[3] ORS 731.170 provides:

"(1) 'Life insurance' means insurance on human lives and every insurance appertaining thereto and includes the granting of endowment benefits, additional benefits in event of death or dismemberment by accident or accidental means, additional benefits in event of the insured's or premium payer's disability and optional modes of settlement of proceeds of life insurance including annuity benefits payable under such a settlement provision. 'Life insurance' does not include workers' compensation coverages.

"(2) For convenience, reference to 'life insurance' in the Insurance Code includes life insurance as defined in subsection (1) of this section and annuities as defined in ORS 731.154, except if the inclusion of annuities obviously is inapplicable or if the context requires, or the Insurance Code provides, otherwise."

" 'Coverage' — all the terms and provisions appearing under one of the following captions of this policy, if provided: 1) *Term Life Insurance*; or 2) Accidental Death and Dismemberment; or 3) Dependents' Life Insurance; or 4) Short Term Disability Insurance; or 5) other benefit riders." (Emphasis added.)

The "terms and provisions appearing under" the caption *"COVERAGE 1 - Term Life Insurance"* (emphasis added) include the following:

### "CONVERSION

"The insured may convert all or part of the insurance *under this coverage* to an individual life policy without evidence of insurability[.]

"* * * * *

"The new policy may be on any plan of *life insurance** * *:

"* * * * *

"2. *without disability or other supplemental benefits.*" (Emphasis added.)

The terms and provisions appearing under the separate caption "Coverage 2 — Accidental Death, Dismemberment and Loss of Sight" do not contain any reference to conversion of that coverage to an individual policy.

The contract is clear. It does not permit conversion of Coverage 2, accidental death benefits, to an individual accidental death policy on termination of an insured employee's employment. It provides (as material here) for conversion only of Coverage 1, term life insurance.[4]

---

[4] In other states, similar contracts have been read to exclude conversion privileges for accidental death benefits. *See, e.g., Rainey v. Guardian Life Ins. Co. of Am.*, 309 SE2d 649 (Ga App 1983) (where insurance contract is divided into "major sections" with distinct titles, conversion privilege applies only to life insurance section in which it is found); *Carter v. General American Life Insurance Co.*, 452 SW2d 253 (Mo App 1970) (conversion provision appeared under heading "Life Insurance" and allowed conversion to "a policy of life insurance without disability or other supplementary benefits"; policy when read as a whole plainly did not provide conversion privilege for accidental death benefit); *Norman v. Aetna Life & Casualty Company*, 551 P2d 667 (Okla App 1976) (citing *Carter v. General American Life Insurance Co., supra*, court held that insurance booklet was unambiguous and that conversion privilege did not apply to accidental death benefit); *Droz v. Paul Revere Life Insurance Co.*, 405 P2d 833 (Ariz App 1965) (policy was not ambiguous when read as a whole; conversion clause was "physically set forth" under life insurance benefit and thus was "manifestly intended to refer to that category of insurance"); *Missig v. Prudential Ins. Co. of America*, 575 F Supp 1185 (ED Mich 1983) (where

Plaintiff next contends that the insurance contract is ambiguous because of an "AMENDATORY RIDER," which states:

> "This policy is amended to comply with the statutes of the governing jurisdiction:
>
> "* * * * *
>
> "This policy is governed by the laws of the state where this policy is delivered."[5]

Plaintiff argues that ORS 743.333, which the rider incorporates by reference, is ambiguous and that the incorporated ambiguity makes the contract — which otherwise is clear in *not* providing for conversion of accidental death benefits — ambiguous. We need not agree or disagree with plaintiff's argument with respect to the effect of incorporating by reference an ambiguous statute in an otherwise unambiguous contract, because we hold that ORS 743.333 itself is clear.

■    ORS 743.333 provides that an insured person whose coverage under a group life insurance policy ceases because of termination of employment is entitled for 31 days to have issued "an individual policy of life insurance *without disability or other supplementary benefits*." (Emphasis added.) The statute also states that "[t]he individual policy shall be in an amount not in excess of the amount of life insurance which ceases because of such termination." ORS 743.333(2). Plaintiff contends that the definition of "life insurance" found in ORS 731.170(1) applies to the use of that same phrase in ORS

---

conversion provision was set forth only in term life insurance section of policy and stated that group policy could be converted to life insurance policy "without disability or other supplementary benefits," conversion privilege did not apply to accidental death benefits). No contrary cases have been cited to us, and we have found none.

[5] The rider reflects an existing statutory requirement for insurance contracts in Oregon. ORS 742.038 provides:

"(1) A policy in violation of the Insurance Code, but otherwise binding on the insurer, shall be held valid, but shall be construed as provided in the Insurance Code.

"(2) Any insurance policy issued and otherwise valid which contains any condition, omission or provision not in compliance with the Insurance Code, shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy been in full compliance with the Insurance Code."

743.333. Defendant counters that "life insurance" as used in ORS 743.333 has a narrower meaning than the one set out in ORS 731.170(1) and that accidental death benefits are "supplementary benefits" to which the conversion requirement of ORS 743.333 does not apply.

In interpreting a statute, our task is to discern the intent of the legislature. ORS 174.020; *State ex rel Juv. Dept. v. Ashley*, 312 Or 169, 174, 818 P2d 1270 (1991). We begin with the text and context of the statute. ORS 174.010; *Porter v. Hill*, 314 Or 86, 91, 838 P2d 45 (1992). Other provisions of the same statute are part of that context; where provisions of a statute appear to conflict, the court avoids such a conflict, whenever possible, by construing the provisions so as to give effect to each. ORS 174.010; *see Porter v. Hill, supra*, (illustrating principle); *Kankkonen v. Hendrickson*, 232 Or 49, 67, 374 P2d 393 (1962) (in construing a statute, effect should be given to every word, phrase, sentence, and section, if possible; where there is a conflict between provisions of the statute, it is the court's duty to try to harmonize them).

The definition section of the Insurance Code, ORS 731.052 to 731.194, defines, among other things, broad classes of insurance, such as home protection insurance, ORS 731.164, marine and transportation insurance, ORS 731.174, mortgage insurance, ORS 731.178, and property insurance, ORS 731.182. (ORS 731.150 notes that some insurance policies "may come within the definition of two or more classes of insurance.") Those definitions are intended primarily to designate and define classes of insurance for administrative purposes, such as the granting of certificates of authority to sell particular classes of insurance. *See generally* ORS 731.354 to 731.488 (establishing requirements and procedures for certification to sell specific classes of insurance). ORS 731.170,[6] the definition of "life insurance" on which plaintiff relies, acknowledges expressly that its broad terms do *not* apply to every other provision of the Insurance Code:

> "*For convenience*, reference to 'life insurance' in the Insurance Code includes life insurance as defined in subsection (1) of this section * * *, *except if * * * the context requires*, or the Insurance Code provides, *otherwise*." ORS 731.170(2) (emphasis added).

---

[6] The full text of ORS 731.170 is quoted *ante* at note 3.

For the reasons that follow, we conclude that "the context requires" that a definition of "life insurance" narrower than the one provided in ORS 731.170 apply to ORS 743.333. ORS 743.303 to 743.358 establish requirements and procedures for the issuance of "group life insurance." *See, e.g.*, ORS 743.312 (providing a grace period for the payment of premiums for group life insurance); ORS 743.324 (providing for equitable adjustment of premiums or benefits where age of insured person has been misstated). Unlike the other provisions relating to the issuance of group life insurance found in ORS 743.303 to 743.358, the conversion provision differentiates expressly between the "life insurance" portion of the group policy, on the one hand, and "disability or other supplementary benefits," on the other hand. ORS 743.333. The privilege to convert is required only with respect to the former. The broad definition of "life insurance" found in ORS 731.170(1) − which specifies that it *includes* such related "additional" benefits as "benefits in event of death * * * by accident or accidental means" and "disability" − is logically inappropriate in the context of ORS 743.333, where "disability or other supplementary benefits" are *excluded*. Were plaintiff correct, the phrase "without disability or other supplementary benefits" in ORS 743.333 would have no effect.

We conclude, then, that the definition of "life insurance" found in ORS 731.170(1) does not apply to ORS 743.333. By its own terms, ORS 743.333 provides a clear distinction between group life insurance *per se*, which an employee has a right to convert to an individual policy without evidence of insurability, and all other forms of insurance. Life insurance is payable on death, whatever the cause; by contrast, under a policy insuring against accidental death, the *accident* is the event insured against. *See Gudnason v. Life Ins. Co. of North America*, 343 SE2d 54, 56 (Va 1986) (so stating in the context of holding that a statute materially identical to ORS 743.333 did not entitle the plaintiff to convert a group policy for accidental death).[7] Accidental

---

[7] One commentator explains:

"Accident insurance is closely akin to life insurance but there are material differences. * * * Under a life insurance policy * * * the insurer undertakes to pay a certain sum upon the happening of an event that will certainly take place

death benefits are "supplementary benefits" within the meaning of ORS 743.333. Therefore, the conversion right provided in ORS 743.333 does not include the right to convert the accidental death benefit of a group life insurance policy to an individual policy.[8]

To summarize, the insurance policy held by plaintiff's decedent here did not provide for the conversion to an individual policy of group accidental death benefits. ORS 743.333 does not require that the policy so provide. Therefore, plaintiff was not entitled to receive those benefits.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court with instructions to enter judgment for defendant.

---

* * *. [T]he accident insurer merely takes upon himself the risk of a misfortune which may or may not happen * * *."

Buist M. Anderson, Anderson on Life Insurance 686 (1991).

[8] ORS 743.333 is based on, and nearly identical to, the equivalent provision in the National Association of Insurance Commissioners Group Life Insurance Definition and Group Life Insurance Standard Provisions Model Act (July 1992) ("NAIC Model Act"). *See* Section 5(H) of the Standard Provisions of the NAIC Model Act (containing wording nearly identical to that in ORS 743.333); Minutes, House Financial Institutions Committee, March 15, 1955, p 1 (Oregon Insurance Commissioner stated that proposed statute, first adopted in Oregon in 1955, was based on NAIC Model Act); NAIC Model Regulation Service 565-11 to 565-14 (July 1992) (1967 Oregon revisions to Insurance Code are among "model and similar" statutes adopted by various jurisdictions). *See also Meyer v. Ford Industries,* 272 Or 531, 538, 538 P2d 353 (1975) (in construing a model act, this court found another state's interpretation of that model act "highly persuasive").

Courts in other jurisdictions that have adopted statutes materially identical to ORS 743.333 and the NAIC Model Act from which it was drawn have held that the conversion privilege does not apply to accidental death benefits. *See, e.g., Equitable Life Assur. Co. of U.S. v. Odle,* 547 SW2d 939 (Tenn 1977) (broad definition section of insurance code was intended to describe "kinds of insurance in the context of determining insurance company qualifications to insure"; "life insurance" in conversion statute had narrower meaning, not including accidental death benefits); *Missig v. Prudential Ins. Co. of America, supra* note 4 (relying on *Equitable Life Assur. Co. of U.S. v. Odle, supra,* court held that statutory conversion privilege did not extend to accidental death benefits); *Droz v. Paul Revere Life Insurance Co., supra* note 4 (statute like ORS 743.333 did not extend conversion privilege to accidental death benefits); *Williams v. C.T. Life and Accident Insurance Co.,* 303 F Supp 1208 (DC Kan 1968), *aff'd* 416 F2d 447 (10th Cir 1969) (same). No contrary cases have been cited to us, and we have found none.