Argued and submitted January 8, reassigned March 31, decision of the Court of Appeals reversed; judgment of the circuit court affirmed July 1, reconsideration denied August 24, 1993

STATE ex rel Thomas H. KIRSCH,
John Hatfield, Lee Bissel, Donna Davis,
Patricia Creelman, Mike Weber
and Errol Schnider,
*Respondents on Review,*

*v.*

John CURNUTT,
Patricia Neff, Michael Throop,
Steven Heydon and John Doe,
*Petitioners on Review.*

(CC 87 CV 0061-33; CA A67772; SC S39484)

853 P2d 1312

Paul R. J. Connolly, of Donaldson, Albert, Tweet, Connolly, Hanna & Muniz, Salem, argued the cause and filed the petition for petitioners on review.

Timothy R. Volpert, of Davis Wright Tremaine, Portland, argued the cause for respondents on review. With him on the response were Steven R. Rinkle, Portland, and Edward E. Sites, of Glenn, Sites & Reeder, Madras.

VAN HOOMISSEN, J.

Gillette, J., concurred in part and specially concurred in part and filed an opinion.

Graber, J., dissented and filed an opinion in which Carson, C. J., and Unis J., joined.

## VAN HOOMISSEN, J.

This is a case involving the permissibility of forming a health district within the boundaries of a previously established health district. ORS chapter 198 establishes procedures for the formation and organization of a number of types of special districts, including health districts authorized under ORS chapter 440. ORS 198.010(10). At issue in this case is the meaning of ORS 198.720, which provides in part:

"Except as otherwise specifically provided by the principal Act:

"* * * * *

"(2)   A district may not include territory included within another district formed under the same principal Act when the other district is authorized to perform *and is performing* the services the affected district is authorized to perform, unless:

"(a)   Withdrawal of such territory is proposed and the territory is withdrawn by withdrawal proceedings conducted in the other district simultaneously with the formation * * * proceedings * * *; or

"(b)   The principal Act provides for automatic withdrawal of the affected territory in such a case."[1] (Emphasis added.)

The material facts are not in dispute. Mountain View Hospital District (MVHD) was formed under ORS chapter 440 in 1964 and has existed continuously since then. It is located within, and includes most of, Jefferson County. MVHD performs some of the health services authorized by ORS chapter 440, including operation of a hospital, ORS 440.360(10), but does not perform ambulance service, ORS 440.360(12). Between 1964 and 1985, the City of Madras furnished ambulance service to the area. In 1985, Madras discontinued its ambulance service and donated its ambulance equipment to a group of volunteers.

---

[1] ORS 198.705(15) provides:

" 'Principal Act' means the statutes which describe the powers of a district, including the statutes under which a district is proposed or is operating."

The principal act governing health districts, ORS chapter 440, does not contain a provision for automatic withdrawal of "the affected territory" in the situation presented here.

The volunteers considered, but rejected, the possibility of affiliating with MVHD in providing ambulance service. Instead, pursuant to ORS chapter 198, the volunteers petitioned for a special election to create a new health district. In September 1986, voters approved the new district, the Jefferson County Emergency Services District (JCESD). JCESD is entirely within the boundaries of MVHD, but it is smaller than MVHD.

MVHD and JCESD are authorized under the same principal act and have identical powers and purposes, including: the power to operate health care facilities and to provide ambulance services and clinic facilities, ORS 440.320(1), 440.360(12) and (13); to sue and be sued, ORS 440.360(1); to enter into contractual agreements, ORS 440.360(2); to borrow money, ORS 440.360(14); and to "assess, levy, and collect taxes" from inhabitants up to a statutory maximum rate, ORS 440.395(1).[2] *See* ORS 440.360(2) ("Any corporation formed under this chapter shall have all the powers necessary to carry out the purposes of ORS 440.315 to 440.410 * * *").

MVHD brought an action under ORS 30.510(1),[3] seeking a declaration that JCESD was formed invalidly and that its officers were, therefore, holding office illegally. The trial court entered judgment in favor of JCESD, reasoning that, although MVHD and JCESD were formed under the same principal act, each was performing a different service and that ORS 198.720(2) prohibited the formation of a second district only where the pre-existing district actually is performing the same service that the second district proposes to perform. MVHD appealed.

The Court of Appeals, interpreting ORS 198.720(2) according to "the well-settled fundamental principle of

---

[2] The ballot used during the election creating JCESD stated that the purpose of the district would be "to provide medical services including but not limited to providing ambulance service within the District area."

[3] ORS 30.510 provides in part:

"An action at law may be maintained in the name of the state * * * against the person offending, in the following cases:

"(1) When any person usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise within this state, or any office in a corporation either public or private, created or formed by or under the authority of this state[.]"

municipal law that there cannot be, at the same time, within the same territory, two distinct municipal corporations, exercising the same powers, jurisdiction and privileges," and noting that "MVHD is performing the services it is authorized to perform," concluded that the formation of JCESD was invalid, and that its officers were holding office illegally. *State ex rel Kirsch v. Curnutt*, 113 Or App 539, 542-43, 833 P2d 331 (1992). For the reasons that follow, we reverse.

The outcome turns on the meaning of ORS 198.720(2).[4]

■■ In the construction of a statute, the intention of the legislature is to be pursued if possible. ORS 174.020; *Mattiza v. Foster*, 311 Or 1, 4, 803 P2d 723 (1990). Our function is simply to ascertain and declare what is, in terms or in substance, contained in the statute, not to insert what has been omitted, or to omit what has been inserted. ORS 174.010. The inquiry into legislative intent begins with a examination of the language and context of the statute itself. ORS 174.010; *Sanders v. Oregon Pacific States Ins. Co.*, 314 Or 521, 527, 840 P2d 87 (1992). It is only appropriate to consider legislative history or other aids to construction when the language and context of the statute itself do not provide sufficient insight into the legislative intent.

In this case, the trial judge reasoned that the area's residents are entitled to have ambulance service if they want it and are willing to pay for it and that, if MVHD was not performing that service, the residents could form a second district to do so. Because JCESD otherwise does not compete with MVHD, the judge concluded that both districts could exist simultaneously. We agree.

■ This court has stated that "words used in a statute are to be given their 'plain' or 'ordinary' meaning." *Davis v. Wasco IED*, 286 Or 261, 266, 593 P2d 1152 (1979) (citation and footnote omitted). Moreover, this court "may not ignore the plain meaning of unambiguous words of a statute." *Ibid.* MVHD is authorized by statute to "perform" ambulance service. It is undisputed, however, that MVHD is *not* "performing" ambulance services. That is precisely why JCESD

---

[4] ORS 198.720(2) was enacted in 1971. This is the first time the statute has been interpreted by this court.

was created by the voters of the area. MVHD fails to satisfy the "and is performing" criterion of ORS 198.720(2), in regard to ambulance services. Thus, the plain language of the statute favors JCESD. To conclude otherwise is to read the words "and is performing" out of the statute.

Ignoring the plain words of the statute, *i.e.*, "and is performing," the dissent proceeds to examine the legislative history of the statute.[5] It is clear that the legislature never considered the question presented by this case. Although recognizing that both parties' policy arguments have merit, the dissent states on the basis of a most generous reading of the relatively scant and inconclusive legislative history that the legislature made the policy choice advocated by MVHD and that the terms of ORS 198.720(2) precluded the formation of JCESD. Such a construction either reads the words "and is performing" out of the statute, or perhaps reads into the statute "and is performing *any* of the services."[6] Neither construction is permitted under the rules of statutory construction set forth in ORS 174.010.

This court often has noted that, in discerning the intent of the legislature, a statute should not be construed "so as to ascribe to the legislature the intent to produce an unreasonable or absurd result." *State v. Galligan*, 312 Or 35, 39, 816 P2d 601 (1991) (quoting *State v. Linthwaite*, 295 Or 162, 170, 665 P2d 863 (1983)). To read the words "and is

---

[5] The legislative history relied on by the dissent does not support its conclusion. The dissent makes much of comments made during the public hearings of a 1967-69 legislative interim committee when proposed Senate Bill 41 was being considered, concluding that those comments suggest its result in this case. Because the legislature rejected SB 41, those comments are an exceedingly thin reed on which to rely. After SB 41 was rejected by the 1969 legislature, the Interim Committee of Governmental Affairs revised the legislation and introduced the revised version as House Bill 1022 in the 1971 legislative session.

There is no relevant legislative history on HB 1022, which became ORS 198.720. The legislative history on which the dissent relies is neither reliable nor persuasive. On this meager history, the dissent concludes that a second district may not be formed in the same territory, even if the existing district is not exercising all of its available powers. The question of what the legislature intended in a situation such as is presented in this case was not even asked, much less answered, during the interim committee hearings.

[6] Although the dissent would affirm the Court of Appeals' result in this case, the dissent fails to discuss the Court of Appeals' analysis or the authorities relied on by that court. None of the authorities cited by the Court of Appeals necessarily supports that court's conclusion. None of them interprets ORS 198.720(2).

performing" out of the statute at issue here would produce an unreasonable result; it would allow a special district that does not provide certain essential services to prevent others from providing those services. Only when "the literal import of the words is so at variance with the apparent policy of the legislation as a whole as to bring about an unreasonable result, [must] the literal interpretation * * * give way and the court * * * look beyond the words of the act." *Johnson v. Star Machinery Co.*, 270 Or 694, 704, 530 P2d 53 (1974). Here, the literal interpretation of "and is performing" does not bring about an unreasonable result that is at variance with the policy of the legislation. The language of the statute clearly indicates that a second district may not be formed to provide services that duplicate services that the existing district "is performing." As the dissent would have it, a health district that chose to operate only a nursing home could use the provisions of ORS 198.720 to prevent the voters of the district from arranging for a much-needed hospital, merely because the nursing home was already in operation, *i.e.* "is performing" *one* of the functions that a health district may perform. The legislative policy does not justify such a result.

There is nothing to suggest that the legislature intended to deny the voters the right to form another service district when MVHD "is *not* performing" an essential service authorized by the principal Act under which both districts were formed. In the absence of a clear and unequivocal legislative mandate, this court will not override the will of the JCESD voters. In this case, as even the dissent concedes, no clear and unequivocal legislative mandate is present.

In summary, the plain language of the statute favors JCESD. Moreover, even if we were to consider the language of the statute to be ambiguous and turn to the legislative history, nothing in that legislative history dictates the result sought by MVHD.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

**GILLETTE, J.,** concurring in part and specially concurring in part.

While I agree with the lead opinion that JCESD has been created validly, I disagree that this issue is settled by the

"plain language" of ORS 198.720(2). The allegedly "plain language" in ORS 198.720 is the phrase, "and is performing." The dissent interprets that phrase to mean "and is performing *any* of the services [that an authorized health district may perform under ORS ch 440]." The lead opinion interprets that phrase to mean "and is performing the *same specific service* [that the newly-proposed health district would provide]." Both the lead opinion and the dissent alter the pivotal "plain language" of that statute.

I join in the result reached by the lead opinion because that outcome appears most conducive to protecting the health and safety of the citizens of Jefferson County — a result I believe that the legislature would wish to see. I find no meaningful assistance in the legislative history that the dissent relies upon — the history is of another, unsuccessful measure and was heard by a different legislature than that which enacted ORS 198.720(2). The dissent's reliance on general principles of municipal law also seems to me to be misplaced. The cases to which it refers are cases where the competing districts were attempting to provide *the same* service. That is not true here.

**GRABER, J.,** dissenting.

I respectfully dissent. The majority reaches what it believes to be the preferable result in this case, but it does so at the expense of this court's recognized method of analyzing statutes.

## BACKGROUND

ORS chapter 198 establishes procedures for the formation and organization of 24 types of districts, including health districts authorized under ORS chapter 440. ORS 198.010(10). At issue in this case is the meaning of ORS 198.720(2), which states:

"Except as otherwise specifically provided by the principal Act:

"* * * * *

"(2) A district may not include territory included within another district formed under the same principal Act when the other district is authorized to perform and is performing

the services the affected district is authorized to perform, unless:

    (a)   Withdrawal of such territory is proposed and the territory is withdrawn by withdrawal proceedings conducted in the other district simultaneously with the formation * * * proceedings * * *; or

    (b)   The principal Act provides for automatic withdrawal of the affected territory in such a case."[1]

Mountain View Hospital District (MVHD) was formed under ORS chapter 440 in 1964 and has existed continuously since then. It is located within, and includes most of, Jefferson County. MVHD performs some of the health services authorized by ORS chapter 440, including operation of a hospital, ORS 440.360(10), but does not perform ambulance service, ORS 440.360(12). Between 1964 and 1985, the City of Madras furnished ambulance service to the area. In 1985, Madras discontinued its ambulance service and donated its ambulance equipment to a group of volunteers.

The volunteers considered, but rejected, the possibility of affiliating with MVHD in providing ambulance service. Instead, pursuant to ORS chapter 198, the volunteers petitioned for a special election to create a new health district. In September 1986, voters approved the new district, the Jefferson County Emergency Services District (JCESD). JCESD is entirely within the boundaries of MVHD, but it is smaller than MVHD.

MVHD and JCESD are authorized under the same principal act. They have identical powers and purposes, including the power to operate health care facilities and to provide ambulance services and clinic facilities, ORS 440.320(1), 440.360(12) and (13); to sue and be sued, ORS 440.360(1); to enter into contractual agreements, ORS 440.360(2); to borrow money, ORS 440.360(14); and to "assess, levy and collect taxes" from their inhabitants up to a

---

[1] ORS 198.705(15) provides:

    " 'Principal Act' means the statutes which describe the powers of a district, including the statutes under which a district is proposed or is operating."

As noted, the "principal Act" governing health districts is ORS chapter 440. It does not contain a provision for automatic withdrawal of "the affected territory" in the situation presented here.

statutory maximum rate, ORS 440.395(1). If JCESD is validly formed, nothing prevents both MVHD and JCESD from hereafter exercising all the powers granted to them or from incurring additional financial obligations and assessing additional taxes accordingly, up to the statutory maximum rate, ORS 198.395(1), permitted for each district.[2] *See* ORS 440.360 ("[a]ny corporation formed under this chapter shall have all the powers necessary to carry out the purposes of ORS 440.315 to 440.410").

## ORS 198.720(2) IS AMBIGUOUS

In interpreting a statute, our task is to ascertain the intent of the legislature. ORS 174.020; *Sanders v. Oregon Pacific States Ins. Co.*, 314 Or 521, 527, 840 P2d 87 (1992). We begin with the text and context of the statute. ORS 174.010; *Sanders v. Oregon Pacific States Ins. Co., supra.* Other provisions of the same statute, and provisions of other statutes on the same subject, are part of that context. *Id.* at 527.

ORS 198.720(2) states that "[a] district may not include territory included within another district formed under the same principal Act when the other district *is authorized to perform and is performing the services* the affected district is authorized to perform." (Emphasis added.) MVHD argues that the emphasized phrase precludes the formation of a second district of the same type, and within the same territory, as an existing district whenever the existing district is performing *any of* the services that it is authorized to perform. JCESD argues that the statute precludes the formation of a second district within the same territory only where the existing district is already performing *the same* service that the second district intends to perform.

MVHD's reading of the key sentence is the more natural and literal one. MVHD "is performing" hospital services, which are "services the affected district [JCESD] is authorized to perform." ORS 198.720(2). That being so, ORS 198.720(2) forbids the formation of JCESD. However, the

---

[2] The ballot used during the election creating JCESD stated that the purpose of the district would be "to provide medical services including but not limited to providing ambulance service within the District area."

insertion of the word "the" before "services" makes JCESD's reading of the statute permissible.

Each of the proposed interpretations is, therefore, plausible. That is, ORS 198.720(2) is ambiguous.

To resolve the ambiguity, I next consider other statutory provisions on the same subject, beginning with other provisions of ORS chapter 198. I then examine ORS chapter 440, the principal act governing health districts.

The provisions of ORS chapter 198 define terms relevant to the organization of special districts, establish compensation for members of governing bodies of special districts, and set out procedures for the filling of vacancies on governing bodies, for the adoption of ordinances by certain types of districts, and for the formation, reorganization, and dissolution of special districts. Nothing in the rest of ORS chapter 198 resolves the ambiguity in ORS 198.720(2).

I next review ORS chapter 440, the principal act governing health districts. ORS 440.395(1) states that a health district may assess, levy, and collect taxes, not to exceed one-fourth of one percent of the real market value of all taxable property within the health district, for the financing of its objectives. ORS 440.395(2) states that a health district may, each year, assess, levy, and collect a special tax to pay the yearly interest on any bonds issued by the district. ORS 440.395 has the apparent purpose of limiting the health services-related tax liabilities of persons living within the territory of a particular health district.[3] Because taxpayers could be exposed to additional health services-related tax liabilities if multiple health districts coexisted within the same territory, ORS 440.395 suggests that the legislature did

---

[3] *See also* ORS 440.505, which provides in part:

"(1) Municipal corporations designated as ports may construct, maintain and operate hospitals * * *. However, after June 23, 1967, a port may not construct or acquire a hospital if any part of a health district organized pursuant to ORS [chapter 440] lies within the boundaries of the port.

"(2) Should any port district under authority of subsection (1) of this section after August 20, 1957, construct, maintain and operate a hospital * * * and levy a tax for any indebtedness or other expense incurred therefor, all taxable property in the port district and also within a health district then operating shall be exempt from all taxes levied by a port district for such hospital purposes."

not intend to authorize the formation of overlapping health districts.[4]

Although ORS chapters 198 and 440 suggest that MVHD is correct, they do not answer conclusively the question of statutory interpretation presented in this case. I turn, then, to the legislative history of ORS 198.720(2). *See Bartz v. State of Oregon*, 314 Or 353, 357, 839 P2d 217 (1992) (after examining text and context of ambiguous statute, court reviews its legislative history).

## LEGISLATIVE HISTORY
## FAVORS MVHD'S INTERPRETATION

ORS 198.720(2) was enacted in 1971 as part of House Bill 1022. Or Laws 1971, ch 727, § 5. HB 1022 was a successor to a 1969 bill, Senate Bill 41, which the 1967-69 Interim Committee on Local Government had drafted.[5]

An early version of the proposed legislation provided, as pertinent here:

> "A district may not include territory included within another district formed under the same principal act or authorized to perform and performing the services the proposed district would perform. Lands within a proposed district owned by the Federal Government, the state, a county, city or any kind of a district shall not be included within a district." Draft of LCC 85, 1967-69 Interim Committee on Local Government, May 10, 1968, p 11.

As submitted to the legislature, that section read:

> "A district may not include territory included within another district formed under the same principal Act or

---

[4] There is no basis in the statute to argue that the two districts together would be limited to the one-fourth of one percent tax rate. ORS chapter 440 gives every health district all of the enumerated powers of a health district, including the power to tax up to the statutorily established maximum rate. ORS chapter 440 simply is not designed to allow the powers of a district — including the power to provide hospital services and the power to tax — to be restricted or sliced thinly to suit a particular desired outcome.

[5] The role of the 1967-69 Interim Committee on Local Government in preparing the precursor of HB 1022 was acknowledged during a meeting of the 1971 House Committee on Urban Affairs. Minutes, House Committee on Urban Affairs, February 9, 1971, p 1.

included within a district *authorized to perform and performing the services the affected districts are authorized to perform*[.]" (Emphasis added.)

During a meeting of the 1967-69 Interim Committee on Local Government, a witness representing the City of Roseburg testified regarding the need for "orderly" development of communities, including the provision of municipal services "without duplication and its resultant costs." Minutes, Interim Committee on Local Government, March 8, 1968, p 4. At another meeting of the committee, the chair of the Portland Metropolitan Study Commission criticized the creation of "small, single-purpose districts." Minutes, Interim Committee on Local Government, June 7, 1968, p 2. In another meeting of the committee, Senator Husband described a problem of "double taxation" for fire protection resulting from the annexation of territory of a rural fire district to a water and fire district. He stated that two districts having the same "abilities" should not coexist. Minutes, Interim Committee on Local Government, July 12, 1968, p 12.

The cited comments suggest that, under SB 41, a second district could not be formed in the same territory as a district having the same "abilities," even if the existing district were not exercising all of its available powers. The cited comments also suggest that the proliferation of "small, single-purpose districts" and the potential for "double taxation" were to be avoided.

After the 1969 legislature rejected SB 41, the 1969-71 Interim Committee on Governmental Affairs revised its content in some respects. The revised version became 1971 HB 1022. HB 1022 contained the phrase that is at issue here and that is nearly identical to the pertinent part of SB 41. I have found no record of any discussion of that phrase during meetings of the 1969-71 Interim Committee.

The 1969-71 Interim Committee prepared a report on HB 1022; the report was read at a meeting of the House Committee on Urban Affairs. Minutes, House Committee on Urban Affairs, February 9, 1971, p 1. The report explained that the bill provided a "uniform procedure for the conduct of proceedings to form, change boundaries of, merge, consolidate and dissolve specified special service districts," and that

it amended and repealed the then-existing district laws so as to "conform" them to the new provisions. The report noted that, under the proposed legislation, "the principal Act controls the purpose of a district, the kind of territory that may be included within a district and other basic substantive provisions that distinguish one [type of] special district from another." Report of the Legislative Interim Committee on Governmental Affairs, November 1970, pp 4-5. The report did not address the meaning or application of the provision at issue here.

I also have reviewed the committee and floor proceedings relating to HB 1022. None of those discussions addressed the question that the court is called on to decide.

The legislative history of ORS 198.270(2) is sparse, but every scrap of it weighs in on MVHD's side of the argument. There is no legislative history to the contrary. The history demonstrates legislative concern about the proliferation of small, single-purpose districts and about the potential for multiple taxation. One of the possible interpretations of the pivotal phrase in ORS 198.270(2) would deal with those concerns. The other would not. It is more likely that the legislature intended to address, rather than ignore, the identified concerns. ORS 198.270(2) should be interpreted accordingly.

## THE MAJORITY'S INTERPRETATION IS AT ODDS WITH LONGSTANDING PRINCIPLES OF MUNICIPAL LAW

Before 1971, when the legislature enacted ORS 198.720(2), this court had occasion to rule on whether two municipal corporations lawfully could exist in the same territory.[6] In *Landis v. City of Roseburg*, 243 Or 44, 411 P2d 282 (1966), the issue presented was whether proceedings to annex an unincorporated area could be initiated when proceedings

---

[6] ORS 198.820(2) provides:

"After the date of the formation order [of a district], the inhabitants of the territory within the district shall be a municipal corporation to be known by the name specified * * *, and by such name shall exercise and carry out the corporate powers and objects conferred by the principal Act of the district."

I conclude from that provision that it is appropriate to look to general principles of municipal law in making the determination required in this case.

to incorporate that area were already in progress. This court concluded that the first municipal body to establish jurisdiction could enjoin the proceedings of the other, because,

> "[i]n those instances where two municipal bodies are lawfully and fully organized, it is clear that both cannot exist for the same purpose and exercise the same authority over the same area.
>
> "* * * * *
>
> "In our opinion, the rule of preference as between rival municipal bodies is a rule of necessity to prevent the abuses that would arise when two governmental powers are attempting to exercise authority over the same territory." *Id.* at 48, 52 (citations omitted).

*See also State v. Co. Court for Washington Co.*, 213 Or 643, 650, 326 P2d 116 (1958) (in a mandamus proceeding to compel submission to voters of the question whether a zoning district should be formed within an existing zoning district, the court noted that "[i]t is well-settled in this state and elsewhere 'that two lawfully and fully organized public or municipal corporations cannot have jurisdiction and control at one time of the same population and territory and exercise like or similar powers in the same boundaries' "); *State ex rel v. Chandler*, 180 Or 28, 34, 175 P2d 448 (1946) (in a *quo warranto* proceeding challenging the inclusion of incorporated cities in a proposed water district, the court concluded that, because "[o]ne of the generally recognized functions of an incorporated city is to supply water to [its] inhabitants," and because the cities in that case were granted the power to do so, the inclusion of those cities in the proposed water district would violate the "principle of law 'that two lawfully and fully organized public or municipal corporations cannot have jurisdiction and control at one time of the same population and territory and exercise like or similar powers in the same boundaries' "); *Priest v. James*, 125 Or 72, 265 P 1092 (1928) (applying that same principle and reaching a similar result in a suit to enjoin an election creating a port district within the territory of an existing port district); 2 McQuillin, Municipal Corporations 382, § 7.08 (3d ed 1988) (stating principle).

This court also has noted, more particularly, the financial liabilities that could be incurred, both by the

inhabitants of a territory and by the districts formed within that territory, if two or more districts capable of providing the same service were to coexist therein. In *Rathfon v. Payette-Oregon S. Irr. Dist.*, 76 Or 606, 149 P 1044 (1915), the plaintiff's land was included in the territory of a municipal corporation known as a district improvement company. The district improvement company had installed an irrigation system on the plaintiff's land, on account of which the plaintiff was subject to indebtedness. 76 Or at 608. A second type of municipal corporation, an irrigation district, later sought to include the plaintiff's land within its territory. This court compared the authorizing legislation for the two types of municipal corporations and concluded that "their objects and purposes are identical." *Id.* at 615. In holding that the plaintiff's land must be excluded from the irrigation district, *id.* at 619, the court wrote:

> "Hence it is necessary to inquire whether or not by the two acts [creating the two types of municipal corporations] the legislature intended to provide for the creation of two separate [municipal] corporations for the purpose of exercising the same delegated powers within the same area, for a similar purpose, at the same time. This case is an illustration of the rule that such cannot be done without the existence of chaos[.] If the irrigation district has full power to tax the lands of plaintiff and sell the same upon an execution for the nonpayment thereof, then nothing will be left to satisfy the liabilities of the district improvement company's indebtedness, and its obligations must necessarily be impaired." *Id.* at 616 (citations omitted).

It is true that none of the cited cases presented the question whether the general principles invoked should apply where one of two coextensive districts was failing to exercise one of its authorized powers and the other district proposed to exercise only that power. Nevertheless, I conclude that the usual principles should apply in this situation as well. The cited cases are concerned with the *potential* for duplication, confusion, and cost that inheres when overlapping municipal corporations have the same *purposes* and the same *powers*. MVHD and JCESD are authorized under the same principal act and have identical purposes and powers. The *potential* for duplication, confusion, and cost exists.

## MVHD'S READING OF ORS 198.720(2)
## FURTHERS THE LEGISLATURE'S GOALS

JCESD contends that, if it cannot be formed, inhabitants will have unmet needs for ambulance services and that voters' preferences, as demonstrated through the formation of JCESD, should be respected. MVHD asserts that ORS 198.720(2) was designed to ensure that the first district formed would be an economically viable unit, even if it could not perform all authorized services at the outset. MVHD also argues that the statute was generally intended to limit the proliferation of small, single-purpose districts and to limit the potential for multiple taxation within a given territory. Both parties' policy arguments have merit, but the legislative history of ORS 198.720(2) suggests that the *legislature* made the policy choice advocated by MVHD.

The legislature has provided a remedy for inhabitants of an existing health district who are dissatisfied with the quality or range of services being provided by the district: The voters may replace, through the election process, the members of the governing body. *See* ORS 440.325 to 440.350 (providing for nomination and election of directors of health districts); ORS chapter 255 (providing generally for special district elections). Elections may be an imperfect way to change the mix of services provided, but it is the only way that the law allows in this instance. If, for example, the residents of a Portland neighborhood want more sewers and fewer parks, they can try to elect new city officials, but they cannot form a second city.

MVHD's reading of the statute is consistent with the subject of the statute, which is the formation of districts. Because the statute relates to the formation of new districts, it should be read to focus on the possibility for *future* confusion, duplication of services, and added cost that would inhere in the formation of the proposed new overlapping district. Read in that light, the key concept is in the following underscored phrase: "A district may not include territory included within another district formed under the same principal Act when the other district is authorized to perform and is performing the *services the affected district is authorized to perform*[.]" ORS 198.720(2) (emphasis added). Because JCESD is "authorized to perform" all the same services as

MVHD, ORS 198.720(2) precluded its formation. It is not pertinent that MVHD has not yet chosen to perform all authorized services and that JCESD intends to perform only an interstitial service at this time; the question concerns *formation* of districts that *both* will have a full panoply of statutory powers.

## CONCLUSION

ORS 198.720(2) precluded the formation of JCESD. I would affirm the decision of the Court of Appeals and, accordingly, dissent.

Carson, C. J., and Unis, J., join this dissenting opinion.