Argued and submitted March 29; resubmitted In Banc October 12, affirmed
December 28, 1994

In the Matter of the Marriage of

Catherine Elizabeth PETERSEN,
*Respondent,*

*and*

Danny Lee PETERSEN,
*Appellant.*

(92-676; CA A79658)

888 P2d 23

George W. Kelly argued the cause and filed the brief for appellant.

Martin J. Leuenberger argued the cause for respondent. With him on the brief was Coughlin, Leuenberger & Moon, P.C.

EDMONDS, J.

Landau, J., dissenting.

**EDMONDS, J.**

Husband appeals a dissolution of marriage judgment, which incorporates the terms of a settlement agreement that the parties made several months before trial. At trial, husband objected to various provisions of the agreement, but the trial court adopted it in its entirety. On appeal, husband challenges the child support, spousal support, property division and visitation provisions of the judgment. On *de novo* review, ORS 19.125(3), we affirm.

The parties were married for ten years. They are the parents of two children, ages 7 and 4. When the parties decided to dissolve their marriage, they discussed and generally agreed on the terms of a property settlement agreement. Those discussions commenced in August of 1992. In order to finalize the agreement, wife went to an attorney, who memorialized the agreement for the parties. Husband reviewed the written agreement, requested changes and eventually signed the agreement in October, 1992. The attorney who prepared the agreement told husband that he should obtain his own attorney if he felt he needed independent advice. Husband declined that invitation. Among other things, the agreement provided that wife would receive custody of the children, and that husband would pay $1,000 a month for child support and would provide medical and dental insurance coverage for the children.

After the agreement was signed, wife filed a petition for dissolution of the parties' marriage which requested relief in accordance with the agreement. However, husband filed a response. At trial, husband argued that the trial court should not adopt the terms of the agreement, because they were inequitable. Specifically, he argued that he was unaware of the extent of the marital obligations when he made the agreement. The trial court rejected husband's argument. It made this finding regarding the amount of child support:

"The child support guidelines presume that the total child support amount in this action is $642.84. However, pursuant to ORS 25.280, the court determines that amount to be unjust or inappropriate, and the presumption of its correctness is rebutted because the parties entered into a Property Settlement Agreement wherein [wife] and [husband] both agreed that [husband] was able to and was

willing to pay the increased amount. In consideration of this circumstance, [husband] is ordered to pay monthly child support of $1,000."

On appeal, husband makes assignments of error concerning child support, spousal support, property division and visitation. Except for the assignment of error regarding the amount of child support, husband's arguments do not require discussion. Husband argues that the trial court had no authority to depart from the presumed amount of child support under the Uniform Child Support Guidelines on the basis of the parties' agreement. He says:

"The Guidelines allow rebuttal of the presumed child support award only where one of 10 listed factors is present. That the parties at one time agreed – and by the time of trial, no longer agreed – to a different amount is not one of the 10 factors. Therefore, the trial court's refusal to follow the Guidelines was error."

ORS 107.105(1)(c) authorizes the court to order payment of child support in such amounts as constitute a just and proper contribution toward the support and welfare of the child. It further provides:

"The court, in determining the amount to be paid, shall use the scale and formula provided for in * * * ORS 25.280."

ORS 25.280 provides, in part:

"In any judicial or administrative proceeding for the establishment or modification of a child support obligation under ORS [chapter 107], the amount of support determined by the formula * * * shall be presumed to be the correct amount of the obligation. This shall be a rebuttable presumption and a written finding or a specific finding on the record that the application of the formula would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption. *The following criteria shall be considered* in making the finding:

"(1)    Evidence of the other available resources of a parent;

"(2)    The reasonable necessities of a parent;

"(3)    The net income of a parent remaining after withholdings required by law or as a condition of employment;

"(4)    A parent's ability to borrow;

"(5)    The number and needs of other dependents of a parent;

"(6)    The special hardships of a parent including, but not limited to, any medical circumstances of a parent affecting the parent's ability to pay child support;

"(7)    The needs of the child;

"(8)    The desirability of the custodial parent remaining in the home as a full-time parent and homemaker;

"(9)    The tax consequences, if any, to both parents resulting from spousal support awarded and determination of which parent will name the child as a dependent; and

"(10)  The financial advantage afforded a parent's household by the income of a spouse or another person with whom the parent lives in a relationship similar to husband and wife." (Emphasis supplied.)

It is apparent from the trial court's statement that it considered the provisions of ORS 25.280. It made a written finding that the presumed amount was "unjust or inappropriate," pursuant to the direction of the statute. Husband and the dissent argue that the trial court's reliance on the parties' agreement is not permitted by ORS 25.280, because it is not among the factors listed in the statute as a basis for departing; thus, the trial court was without authority to impose child support in the amount of $1,000, but instead was required to impose the presumed correct amount of $642. That argument raises an issue of statutory construction.

■    The goal of any statutory analysis is to discern the legislature's intent. The issue in this case is whether the legislature intended the criteria used in ORS 25.280 to be the exclusive criteria in determining whether the presumed amount of support is rebutted. That analysis begins with the text and context of the pertinent statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). ORS 25.280 says that "the following criteria *shall be considered* in making the finding" that the presumed amount of support is "unjust or inappropriate." (Emphasis supplied.) We agree with the dissent's characterization that "the provision does not clearly require the court to base a departure from the presumption only on the criteria enumerated."[1] 132

---

[1] The dissent says that it accepts that interpretation "for the sake of argument."

Or App at 204. Thus, on its face, although the statute mandates "consideration" of certain criteria, it does not forbid the consideration of other factors. That omission is significant.

ORS 174.010 says that the office of a judge is "simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted * * *." In *Barrett et al. v. Union Bridge Co.*, 117 Or 566, 245 P 308 (1926), the court considered what is necessary under the predecessor to ORS 174.010 before a court could add words to a statute:

> "Section 715, Or. L., directs that the courts in the construction of statutes, are 'simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, nor to omit what has been inserted.' *We ought never to import into a statute words which are not to be found there, unless from a careful consideration of the entire statute it be ascertained that to import such words is necessary to give effect to the obvious and plain intention and meaning of the legislature.* Under the directions of the statute last referred to, *we are not at liberty to give effect to any supposed intention or meaning in the legislature, unless the words to be imported into the statute are, in substance at least, contained in it.*" 117 Or at 570. (Emphasis supplied.)

Thus, because ORS 25.280 does not say that the listed criteria are exclusive, we can deem them to be exclusive only if exclusivity is necessary to give effect to the intention of the legislature as expressed in the text and context of the statute.

ORS 25.280 is part of the statutory scheme enacted by the legislature in response to the federal Family Support Act of 1988. ORS 25.270 explains:

> "The Legislative Assembly finds that:
>
> "(1)  The federal Family Support Act of 1988 mandates that the state must establish a formula for child support award amounts that is applicable in any judicial or administrative proceeding for the award of child support.
>
> "(2)  It is further mandated that the amount of child support determined by the formula must be presumed to be the correct amount unless rebutted by a specific finding on the record that the application of the formula would be unjust or inappropriate in the particular case as determined under criteria established by the state.

"(3) It is also mandated that the formula is to be reviewed at least once every four years to insure that the application of the formula results in appropriate child support awards.

"(4) There is a need for uniformity in child support awards, and child support awards often are based upon noneconomic factors and are inadequate in terms of the needs of the child.

"(5) The Support Enforcement Division of the Department of Justice is the appropriate agency to establish the required formula."

Subsection (4) tells us that the federal Family Support Act is intended to prevent arbitrary awards of child support that are not based on economic factors and that do not supply the needs of the child. To that end, the federal government requires states to promulgate guidelines for the determination of the amount of child support. The state has complied with the federal law by enacting ORS 25.270 *et seq*.

The dissent asserts that the Family Support Act of 1988 requires that the guidelines, when promulgated, be the only criteria on which the amount of support can be determined. *See* 132 Or App at 203. However, nothing in the language on which it relies suggests that intention. The Act and the legislative history underlying it use the word "guidelines." When the words used in a statute have an ordinary meaning that reveals the intent of the drafters, there is no need to resort to rules of statutory construction or other aids to interpretation. *Whipple v. Howser*, 291 Or 475, 482, 632 P2d 782 (1981). The word "guidelines" has an ordinary meaning.[2] *Webster's Third New International Dictionary* 1009 (1976), defines a guideline as "an indication or outline of future policy or conduct (as of a government)." The Family Support Act is merely that; an outline of general policy that directs the states to enact a formula for child support awards that will meet the goals expressed in ORS 25.270(4). It is apparent that Congress intended no more than a broad general directive to the states, leaving it to them to adopt specific standards.

---

[2] In construing a statute, words of common usage are to be given their ordinary meaning. *Perez v. State Farm Mutual Ins. Co.*, 289 Or 295, 299, 613 P2d 32 (1980).

Although the legislature could have made the criteria in ORS 25.280 exclusive, it chose not to do so expressly. As the dissent correctly notes, the legislature knows how to make a statutory requirement exclusive or nonexclusive. *See former* ORS 107.105(1)(c). The fact that it chose not to use express language to make the enumerated criteria exclusive leaves a question of whether such an intent can be implied.[3]

■ First, it is not necessary to interpret the criteria as exclusive in order to give effect to the intention of the legislature as expressed in ORS 25.270(4). What the statutory scheme is intended to prohibit is the use of noneconomic factors in the determination of the amount of child support; factors that have no relevance to the needs of the child. When ORS 25.280 and ORS 25.270(4) are read together, it is apparent that the legislature required only that the trial court "consider" the enumerated economic factors. Had it intended that the courts are prohibited from considering other economic factors, it would have said so expressly by using the word "only," or similar language.

Second, ORS 25.280 must be read together with ORS 107.105(1)(c) in determining the authority of a trial court to award an amount of child support in excess of the presumed amount, based on the agreement of the parties. When the legislature enacted ORS 25.270 *et seq,* it left intact certain language in ORS 107.105(1)(c). ORS 107.105(1)(c) provides that the court may decree "such amount of money, in gross or installments, or both, as constitutes just and proper contribution toward the support and welfare of such children." Then it says, "in determining the amount to be paid, [the court] shall use the scale and formula provided for in ORS 25.275 and 25.280." If we were to adopt husband's argument, we would be ignoring the legislature's direction that the amount of child support to be paid by a parent is to be based on a standard of "just and proper" contribution. Moreover, despite the dissent's arguments to the contrary, the language

---

[3] The dissent infers from the absence of language in the statute that the factors are nonexclusive and that, therefore, the legislature must have intended them to be exclusive. However, we are forbidden by ORS 174.010 from making such an implication, unless the concept of "exclusivity" is necessary to give effect to the intention of the legislature as expressed in the language of the statute and its companion statutes. *Barrett el al. v. Union Bridge Co., supra,* 117 Or at 570; *see also Porter v. Hill,* 314 Or 86, 91, 838 P2d 45 (1992).

of OAR 137-50-330 merely tracks the language of ORS 107.105. OAR 137-50-330(2)(a) provides that the presumption is rebutted "by a finding that the amount is unjust or inappropriate *based upon the criteria * * *.*" (Emphasis supplied.) Like the statute, the criteria are nonexclusive factors to be considered. The directive remains that the court set a just and proper child support amount.

■    Based on our reading of the statutes, the obvious intent of ORS 107.105(1)(c) and ORS 25.280 is to provide for an amount of support that is in the best interest of the dependent child. It would be inconsistent with that legislative purpose to prohibit a trial court from considering other nonenumerated economic factors that are relevant to the needs of the dependent child. Thus, we need go no further than the text and context of ORS 25.280 to determine that the legislature has not expressly or implicitly said that trial courts are forbidden from considering other nonenumerated economic factors.

The dissent says:

"Nevertheless, prior decisions of the Supreme Court and this court remove any doubt that that is precisely what the law requires." 132 Or App at 204.

First, the dissent relies on *Perlenfein and Perlenfein*, 316 Or 16, 24, 848 P2d 604 (1993). In that case, the issue was whether undistributed income of a closely held corporation that was attributable to a minority shareholder of the corporation for income tax purposes, also was attributable to the shareholder for the purposes of determining his child support obligation. One of the arguments made by the shareholder husband was that the result would be unfair if "gross income" as defined by the guidelines was not limited to "available income." In response to that argument, the court noted that the act contemplates adjustment of the presumed amount to avoid an unjust result "by reason of various listed criteria." 316 Or at 24. The opinion does not purport to decide the issue in this case: whether the court can consider factors outside the listed criteria in ORS 25.280. The dissent seizes on language that is unrelated to the issue in this case.

Second, the dissent relies on *Rossi and Rossi*, 128 Or App 536, 876 P2d 820 (1994). There is language in that case

that supports husband's and the dissent's position. There, we said:

> "Consistent with the statute, the uniform child support guidelines provide that child support must be calculated in accordance with the formula required by the statute, and that, only if the trial court expressly finds that the amount required by the formula is unjust or inappropriate, based on one or more of the ten statutory criteria, can the trial court depart from the amount determined by the formula. OAR 137-50-330(2).
>
> "On its face, the statute and the regulations impose a mandatory, mechanical, two-step process. When setting child support amounts, trial courts *must* use the formula required by the statute unless the amount dictated by the formula is expressly found to be unjust or inappropriate based on one or more of the ten factors enumerated in the statute." 128 Or App at 543. (Emphasis in original.)

The dissent invokes the principle of *stare decisis* and contends that we ought not to disavow the above language in *Rossi*. For purposes of considering its value as precedent, it is important to review the facts in *Rossi* which are different from the facts here. In that case, the trial court required the wife to file a satisfaction of judgment for one month's child support to offset the husband's obligation in the event that the husband incurred transportation costs during summer vacation. The trial court made the satisfaction contingent on expenses actually being incurred. The majority opinion reasoned that the trial court lacked authority to make the satisfaction conditional and to give the husband the credit, because it had made no written or specific findings that the presumptive award was unjust or inappropriate. 128 Or App at 544. Here, in contrast to *Rossi*, this trial court did make a written and specific finding as to why the presumptive award was unjust and inappropriate and, thus, complied with ORS 25.280.

The dissent is unpersuaded by the distinction. It complains:

> "According to the majority, all that is required by ORS 25.280 is that the trial court say that it 'considered' the enumerated factors. Then, the court is free to justify its decision to depart from the guidelines on any basis it chooses.

"I encourage the members of this court and the members of the domestic relations bar to think about that proposition carefully. If the majority is correct, then the guidelines and the process that they prescribe are completely illusory. All a court need do is utter certain magic words—'I have considered the factors in ORS 25.280'—and it is free to set child support as it pleases." 132 Or App at 210.

Whatever fears the dissent has about trial courts exercising their discretion is unfounded. ORS 25.270(4) clearly requires that the determination of child support amounts be based on economic factors that bear on the needs and the best interests of children, and the trial court's authority is circumscribed to that extent. We are confident that the trial bench in Oregon will exercise its discretion properly in the light of those guidelines. Moreover, the quoted language from *Rossi* is a mistaken interpretation of legislative intent unsupported by the language of the statutes as we have previously illustrated. We choose not to sacrifice a correct interpretation of legislative intent on the alter of *stare decisis,* and we disavow the proposition that trial courts are forbidden under ORS 25.280 from "considering" nonenumerated factors.

■ The dissent also says that our interpretation of ORS 25.280 is contrary to the legislative history underlying the statute. It offers the testimony of a representative of the Support Enforcement Division before a legislative committee in support of its argument. *See* 132 Or App at 207. First, resort to legislative history is inappropriate under ORS 174.010 unless the language and context of the statute do not provide sufficient insight into legislative intent. *State ex rel Kirsch v. Curnutt,* 317 Or 92, 97, 853 P2d 1312 (1993). Here, ORS 25.280 and its companion statutes clearly do not say that the enumerated criteria are the only factors that the trial court may consider, and their text and context do not require that interpretation to give effect to the intention of the legislature as expressed in the statutes. However, even if it is permissible to refer to legislative history to construe ORS 25.280, the testimony relied on by the dissent is not persuasive that the legislature intended the criteria to be exclusive. In substance, the testimony simply says that the trial court must "reference" the criteria in deciding whether to award the presumed amount. The language of ORS 25.280 tracks

accordingly when it says the trial court must "consider" the specified criteria in arriving at its decision.

■      Beyond all of the specific arguments made by husband and the dissent, there is a more fundamental reason why those arguments do not prevail. For the sake of argument only, we will assume that the language in ORS 25.280 and the other statutes do not clearly answer the question of whether the legislature intended the enumerated criteria to be exclusive or nonexclusive. When it is necessary to construe an ambiguous statute, we discern the legislature's intent and interpret the statute in a manner that will be reasonable and consistent with the legislature's general policy. *McKean-Coffman v. Employment Div.*, 312 Or 543, 549, 824 P2d 410, *mod*, 314 Or 645, 842 P2d 380 (1992). As we have said, ORS 25.270(4) expresses the policy that child support awards be based on economic factors that address the needs of the dependant children. ORS 25.270 *et seq* spring from the perception that there is a need for uniformity in child support awards because, previously, those awards had been based on noneconomic factors and were inadequate to meet the needs of the child. An increase in the amount of child support above the presumed amount is not inconsistent with the legislative policy underlying the statute. The agreement in this case was obviously based on economic factors and presumably will more adequately supply the needs of the child than would the presumed amount. If a child's parents agree that a greater amount of support than the presumed amount is appropriate to meet the needs of their children, why would the legislature have intended ORS 25.280 to be an impediment to that result? The dissent's interpretation would have the opposite effect; it is an interpretation that is inconsistent with the policy of the federal Family Support Act, as well as the Oregon statutory scheme enacted pursuant to it.

The dissent says:

"I do not read the law to prohibit courts from accepting settlement agreements as to amounts of child support. I do insist, however, that the courts cannot blindly accept such agreements without expressly evaluating them under the criteria enumerated in the statute and the guidelines. Any other reading of the law makes the determination of child support an exercise of unfettered discretion, which is exactly

· what the guidelines were enacted to prevent." 132 Or App at 211 n 4.

That suggests that either this trial court did not consider the enumerated factors or that it did not make a good enough record. Again, the dissent would add requirements to ORS 25.280 that are not there. The only finding that the statute requires to be in writing or on the record is the finding that the presumed amount is "unjust" or "inappropriate." The trial court did exactly that, and its ruling demonstrates that it did consider the requirements of ORS 25.280.

■ In summary, we hold that the trial court did not exceed its authority under ORS 25.280 when it adopted the parties' agreement for payment of child support in an amount greater than the presumed amount under the guidelines. Although the trial court and we, on review, are at liberty to · reject the parties' agreement and require husband to pay the presumed amount of support, we decline to do so, finding that the agreement is in the best interests of their children.

Affirmed. Costs to wife.

**LANDAU, J.,** dissenting.

I would have thought this an easy decision. We rejected the arguments on which the majority rests its opinion only months ago in *Rossi and Rossi*, 128 Or App 536, 876 P2d 820 (1994). Now, the ink barely dry on the Advance Sheets, the majority overrules that decision, and effectively guts the child support guidelines in the process.

Before I am accused of overstatement, let me hasten to explain. As I read the majority's opinion, the amount of support dictated by the child support guidelines formula is not required if the trial court utters the following phrase:

> "I have considered the factors enumerated in ORS 25.280 and determine that the amount required by the formula is unjust or inappropriate."

The trial court then can, in the exercise of its discretion, simply award what it pleases. In holding that courts need not justify any departures from the formula by specific reference to the criteria enumerated in the statute and the guidelines, the majority ignores the language of the federal law that requires the adoption of mandatory guidelines, the state law

that resulted, and the regulations that implement the state law.

I begin with the language of the federal Family Support Act of 1988, which requires the adoption of mandatory, uniform child support guidelines in the first place. It says that there must be a rebuttable presumption that the amount of support dictated by guidelines adopted by the state is correct. Then, if a court wishes to deviate from that amount,

> "[a] written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case, *as determined under criteria established by the State,* shall be sufficient to rebut the presumption in that case." 42 USC § 667(b)(2). (Emphasis supplied.)

The legislative history confirms what that language suggests:

> "Guidelines developed by States *must* be applied by judges and other officials in determining the amount of any child support award *unless* the judge or official, *pursuant to the criteria established by the State,* makes a finding that there is good cause for not applying the guidelines." 5 US Code Cong & Adm News 2794 (1988)(S Rep No 100-377, sec 103, 100th Cong 2d Sess 17 (1988)). (Emphasis supplied.)

The majority ignores both the text and the history of the federal law, insisting that the use of the word "guidelines" in that law means that Congress requires states to adopt a general "policy" or "outline" that is merely precatory in nature and imposes no particular limitations on the trial courts' determinations of what is just and equitable. That position cannot be squared with the language of the law, which provides that the states are required to enact laws that *must* provide a quantitative formula for setting child support awards that *must* be presumed correct *unless* the trial court specifically finds that the award is unjust or unreasonable *pursuant to the criteria established by the state.*[1]

---

[1] I do not understand Congress to have preempted the authority of the state to decide what those specific criteria will be. Indeed, different states have, in conformance with the federal law, enacted different lists of factors that permit the trial court to depart from the award dictated by the formula. The child support statutes of Colorado, for example, expressly allow a court to base a child support award on the stipulation of the parties, provided certain prerequisites guaranteeing the adequacy of the award are met. Colo Rev Stat § 14-10-115(3)(b) (Supp 1994). For whatever

ORS 25.280, enacted in direct response to the federal law, provides that there is a rebuttable presumption that the award dictated by the guidelines is correct. It then provides:

"[A] written finding or a specific finding on the record that the application of the formula would be unjust or inappropriate shall be sufficient to rebut the presumption. The following criteria shall be considered in making the finding * * *."

The statute then lists ten criteria. ORS 25.280(1)-(10).

I assume, for the sake of argument, that, in saying that the enumerated criteria "shall be considered," the provision does not clearly require the court to base a departure from the presumption only on the criteria enumerated. Nevertheless, prior decisions of the Supreme Court and this court remove any doubt that that is precisely what the law requires. In *Perlenfein and Perlenfein*, 316 Or 16, 24, 848 P2d 604 (1993), the Supreme Court said that, under ORS 25.280, "the presumption may be rebutted by a finding that the application of the formula is unjust or inappropriate *by reason of various listed criteria*." (Emphasis supplied.) More recently, in *Rossi and Rossi, supra*, we held that the trial court may justify a departure from the amount dictated by the guidelines formula *only* by expressly finding that that amount is unjust or inappropriate "based on one or more of the ten statutory criteria." 128 Or App at 543.

The majority does not take issue with my reading of *Perlenfein*. It simply asserts that we are not bound by the language of that opinion on which I rely, because the court included that language in deciding an issue that is not the same as the dispute in this case. I am unpersuaded.

In *Perlenfein*, the husband argued that the trial court erred in including certain assets as his income for the purpose of determining the amount of child support under the guidelines. 316 Or at 22. In the alternative, he argued that, even if the trial court correctly included those assets as

---

reasons, the Oregon Legislature has not chosen to include such a provision in the child support statutes of this state.

My point is that Congress clearly requires that any departure from the award that is presumed correct must be based on whatever criteria are adopted by the state legislatures. Courts and support enforcement officials are not free to make them up as they see fit.

income, the trial court should have concluded that it was unjust or inequitable to calculate a child support award on the basis of those assets. The husband's arguments necessitated the Supreme Court's description of how the guidelines work, that is to say, how the guidelines require the trial court first to calculate an award based on the formula and then to determine whether that award is unjust or inappropriate, "by reason of the various listed criteria."

The court then held that the husband should have an opportunity to present his case for rebutting the presumption that the award dictated by the formula was just and reasonable. 316 Or at 24-26. In fact, the court specifically identified two of the statutory rebuttal criteria that could be the basis for departing from the guidelines amount. 316 Or at 25. That was the court's *holding*, not a gratuitous juridical detour. In that light, I submit that the Supreme Court's construction of the guidelines in *Perlenfein*, which the majority apparently acknowledges is contrary to its own, cannot be ignored.

As for *Rossi and Rossi*, the majority again concedes that the decision contains language that is contrary to its new view of the law. It simply asserts that that language is "mistaken" *dictum* and should be overruled. That language, however, merely parrots what the Supreme Court said in *Perlenfein*. Moreover, the majority fails to address the fact that, in reaching the *holding* in *Rossi and Rossi*, we rejected the very arguments the majority now asserts as the basis for overruling that *dictum*. *See* 128 Or App at 544-48. In short, the majority does not merely rewrite the statutes; it rewrites our case law that has previously—indeed, recently—interpreted those statutes, as well. We are constrained to be especially cautious about overruling our own prior construction of a statute, because "[s]tatutory interpretation particularly implicates the rule of *stare decisis.*" *Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992). The majority, however, apparently is untroubled by any such notions of caution and precedent.

The former version of the statute further indicates the legislature's intention to do exactly what the federal law requires in permitting courts to rebut the presumption only by reference to the criteria specifically enumerated in the law. Enacted before the application of child support guidelines

became federally mandated, the state law provided that the trial courts must determine the amount of child support in proportion to the parents' ability to pay. It then provided that,

> "[i]n making this determination, the court shall consider, *but not limit itself to*, the following factors * * *." ORS 107.105(1)(c) (*since amended by* Or Laws 1989, ch 811, § 6; Or Laws 1993, ch 315, § 1; Or Laws 1993, ch 716, § 3). (Emphasis supplied.)

The emphasized language was deleted in 1989, when the legislature enacted ORS 25.280. Accordingly, it seems clear that when the legislature wants to say that the courts are not limited to a particular list of criteria in setting child support, it says so in words plain enough for all to understand. No such language can be found in ORS 25.280; the legislature, in fact, took it out. The majority now stubbornly reads it back into the statute by judicial fiat. We lack the authority to rewrite statutes in that manner. ORS 174.010.

There is, in fact, an obvious internal inconsistency in the majority's argument on this point. The majority emphasizes that we cannot read into the statute words that have not been enacted by the legislature. Yet that is precisely what the majority proceeds to do: Where no such words may be found in the law, it holds that the statute now allows courts to predicate their child support awards on factors that are not enumerated in the statute. The majority's only defense is that the statute does not say that courts *cannot* do that. In the area of domestic relations, however, the courts only have the authority that the legislature affirmatively gives them. *Burnett et al. v. Hatch*, 200 Or 291, 298, 266 P2d 414 (1954); *Edwards and Edwards*, 124 Or App 646, 649, 863 P2d 513 (1993), *mod on other grounds* 127 Or App 489, 873 P2d 401 (1994).

Any remaining doubt that the legislature intended courts to be tethered by the enumerated criteria is dispelled by reference to the legislative history of ORS 25.280. Colleen Sealock, the Administrator of the Support Enforcement Division, which drafted and proposed the legislation that later was codified as ORS 25.280, explained that the bill requires courts to use the formula to be developed by the Division. She then explained that the correctness of the formula amount

may be rebutted in the following manner, in accordance with the requirements of federal law:

> "This bill also includes specific criteria to, to be used to rebut or refute that child support amount. *So a judge or a hearings officer can say for a particular reason, and they are identified in the bill itself,* I believe it is section 3 of your bill, exactly why the judge or the hearings officer chooses not to follow the guideline amount and instead comes up with a different amount.
>
> "* * * * *
>
> "Section 3 * * * is the criteria that allows judges or referees using the guideline. So, we use the guideline; we make that recommendation; the judge looks at it and says, I think the guideline is too high or too low, *this is the criteria he must, he or she must reference* about why they choose not to follow the guideline recommendation." Tape recording, House Committee on the Judiciary, Subcommittee on Family Justice, February 17, 1989, Tape 31, Side B, Testimony of Colleen Sealock. (Emphasis supplied.)

Similarly, Maureen McKnight, attorney for Oregon Legal Services, testified in support of amendments to the list of rebuttal factors:

> "[w]hat we have done in the bill so far, is tell SED to create support guidelines and tell them what factors to consider, and now in section 4, we're following federal law and creating a rebuttable presumption for the amount of support determined under that formula. *But again, according to federal law, we're creating criteria for a trier to use if the trier wants to deviate from the amount of support determined under the formula.*" Tape recording, Senate Committee on the Judiciary, May 30, 1989, Tape 210, Side A, Testimony of Maureen McKnight. (Emphasis supplied.)

In fact, the amendment she proposed defined one of the criteria, for the purpose of making clear that certain facts could *not* be considered in rebutting the guidelines amount:

> "I've added a sentence that says, or excuse me, language that limits the criteria of net income of a parent to be the 'net income remaining after withholdings required by law or as a condition of employment' *to make clear that voluntary deductions or deferred compensation aren't going to be permissible deductions in terms of adjustment to the support figure or reason to deviate from it.*" Tape recording, Senate

Committee on the Judiciary, May 30, 1989, Tape 210, Side A, Testimony of Maureen McKnight. (Emphasis supplied.)

The legislature adopted McKnight's proposed limitations. In so doing, it limited the scope of one of the enumerated criteria. I find that action especially damning to the majority's argument. For, if the majority is correct that trial courts are at liberty to depart from the guidelines for reasons not enumerated in the statutes, then a court could depart from the statute on the basis of a criterion that the legislature expressly rejected. That makes no sense.

Nothing in the legislative history suggests that courts are free to ignore the rebuttal criteria enumerated in the law, or to make up their own. To the contrary, as the foregoing testimony makes quite clear, the court *must* base any departure from the guidelines formula on the criteria listed in the law.[2]

The majority insists that it does not have to consider legislative history, because the language of the statute is so clear. I have a difficult time agreeing with that, in the light of the fact that, only a few months ago, this court said that the language meant the opposite of what the majority now asserts is so unambiguous.

The majority argues that, in any event, the legislative history is unpersuasive, because it only says that the trial court must "reference" the criteria enumerated in the statute, not that the trial court lacks authority to make up its own criteria. Suffice it to say that I cannot read the legislative history and reach the same conclusion. It clearly states that the law includes "*specific criteria* to be used to rebut or refute" the presumed correct award, that the trial courts "*must* reference" those specific criteria in choosing not to follow the award dictated by the guidelines formula, and that

---

[2] In reviewing that and similar legislative history, the Supreme Court in *Perlenfein and Perlenfein, supra,* observed:

"We note that the legislative history of ORS 25.270 *et seq* (1989 House Bill 2455) places considerable emphasis on the two-step nature of the process of determining a child *support obligation:* (1) the determination of a presumptively correct child support amount by application of the formula established in OAR 137-50-330(1) and (2) the rebuttal, if any, of that presumed amount *under the criteria established in OAR 137-50-330(2)(A) through (J)*." 316 Or at 25 n 8. (Emphasis supplied.)

it expressly made choices about what criteria to include in the statutory list, to make clear that nonenumerated criteria *"aren't going to be permissible"* bases for departing from the guidelines amount.

Finally, the text of the child support guidelines in effect at the time of the trial court's decision plainly indicates that the courts are required to base their rebuttal of the presumption on the criteria enumerated in the law. The guidelines provide:

> "The presumption may be rebutted by a finding that the amount is unjust or inappropriate *based upon the criteria set forth in paragraphs (A) through (J) of this subsection.* Effective May 1, 1992, findings that rebut the presumption * * * shall state that amount and include the reason why the order varies from that amount[.]" OAR 137-50-330. (Emphasis supplied.)

Then, in paragraphs (A) through (J), the guidelines repeat the criteria enumerated in the statute. The comments to the guidelines even more plainly explain that the guidelines are intended to implement "limitations by the authorizing legislation as to the factors which may be considered in rebutting the presumptive amount." Oregon Child Support Guidelines Commentary 1 (1991). Once again, the majority simply ignores the language of the regulations that is flatly at odds with its holding.[3]

Thus, the text of the federal Family Support Act of 1988, its legislative history, the text of ORS 25.280, prior case law construing it, its context, its legislative history and its implementing regulations all squarely controvert the majority's characterization of the law.

The majority, nevertheless, concludes that the courts are not constrained to justify, by reference to the

---

[3] The current guidelines are even more explicit, requiring that, when the presumption is rebutted,

> "[a] new support amount may be calculated by determining an appropriate dollar value to be *attributed to the specific criteria upon which the finding was based* * * *." OAR 137-50-330(2)(b). (Emphasis supplied.)

The unofficial comments to those guidelines similarly explain that "[t]he guidelines set forth criteria upon which such a finding *must* be based." Unofficial Commentary: Changes to the Child Support Guidelines Effective October 15, 1994 at 1 (1994). (Emphasis supplied.)

criteria enumerated in the statute and the guidelines, any departure from the amount of support that is presumed to be correct. According to the majority, all that is required by ORS 25.280 is that the trial court say that it "considered" the enumerated factors. Then, the court is free to justify its decision to depart from the guidelines on any basis it chooses.

I encourage the members of this court and the members of the domestic relations bar to think about that proposition carefully. If the majority is correct, then the guidelines and the process that they prescribe are completely illusory. All a court need do is utter certain magic words — "I have considered the factors in ORS 25.280" — and it is free to set child support as it pleases.

That is, in fact, precisely what the trial court did in this case. It said:

> "[P]ursuant to ORS 25.280, the court determines that amount [required by the guidelines] to be unjust or inappropriate, and the presumption of its correctness is rebutted because the parties entered into a Property Settlement Agreement * * *."

According to the majority, "[i]t is apparent from the trial court's statement that it considered the provisions of ORS 25.280" and "made a written finding that the presumed amount was 'unjust or inappropriate[.]' " 132 Or App at 194. That, the majority holds, is all the law requires. Consequently, the majority concludes, the trial court is free to base its decision on other criteria not enumerated in the statute or the guidelines; in this case, on the agreement of the parties.

The majority justifies its holding by referring to language in ORS 107.105(1)(c), which authorizes the courts to award child support that is "just and proper." The majority reasons that to give effect to that provision, the trial courts must have discretion to set child support in an amount that they deem appropriate under the circumstances, whether or not that amount can be justified by reference to the criteria enumerated in ORS 25.280 and the guidelines. Any other construction, the majority concludes, would give no effect to the "just and proper" language of ORS 107.105(1)(c).

The logic of the majority's argument is thin to the point of disappearance. Requiring courts to justify their

departures from the guidelines by reference to the criteria enumerated in ORS 25.280 and the guidelines themselves does no violence to ORS 107.105(1)(c). As we said in rejecting the same argument in *Rossi and Rossi, supra,* ORS 25.280 and the guidelines preserve the courts' authority to make adjustments to an award otherwise presumed correct. ORS 25.280 and the guidelines, in fact, define what "just and proper" means, by requiring courts to use the guidelines in determining what is a "just and proper" award.

There is no question that, by enumerating a limited number of criteria, ORS 25.280 and the guidelines impose a limitation on the permissible bases for departing from the presumed correct award. That, however, is precisely the purpose of the guidelines. They establish limitations on the discretion of the courts in setting child support awards.

I would hold that the trial court erred in departing from the amount of child support dictated by the guidelines formula without basing its departure "upon the criteria set forth" in the guidelines. OAR 137-50-330(2). It merely stated the conclusion that the amount is unjust and inappropriate, and accepted the parties' agreement to pay a different amount. The agreement of the parties, however, is not among the factors enumerated in OAR 137-50-330(2). Accordingly, I would reverse the trial court.[4]

I dissent.

Warren, De Muniz and Haselton, JJ., join in this dissenting opinion.

---

[4] I do not read the law to prohibit courts from accepting settlement agreements as to amounts of child support. I do insist, however, that the courts cannot blindly accept such agreements without expressly evaluating them under the criteria enumerated in the statute and the guidelines. Any other reading of the law makes the determination of child support an exercise of unfettered discretion, which is exactly what the guidelines were enacted to prevent.