Submitted on record and briefs December 17, 1998, reversed and remanded
April 14, 1999

STATE OF OREGON ex rel DEPARTMENT
OF HUMAN RESOURCES,
*Respondent,*

*and*

Rhonda ABNER,
aka Rhonda Abner Naillon,
*Appellant,*

*v.*

Mark A. FAIRCHILD,
*Respondent.*

(97399; CA A100942)

979 P2d 768

David B. Hydes and Hydes and Day filed the brief for appellant.

J. David Coughlin filed the brief for respondent Mark A. Fairchild.

Kelly Knivila, Assistant Attorney General, waived appearance for respondent Department of Human Resources.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

Mother appeals from a judgment amending father's child support obligation in which the trial court departed from the Child Support Guidelines to reduce father's support obligation because he had incurred debts in reliance on mother's representation that the children were to be adopted. We review *de novo*, ORS 19.415(3), and reverse.

Mother gave birth to twin girls on March 2, 1993. Mother and father were never married; however, paternity is not disputed. Father lives with his wife, their two daughters, ages four and five at the time of trial, and his step-daughter. Father did not have any direct contact with mother after the twins were born, but his wife has had several telephone conversations with her and visited her and the twins a couple of times. Father initially did not pay child support as it was his understanding that mother did not want child support from him. In September 1995, father learned through a letter from mother that she had married and moved to Connecticut. In the letter, mother requested that father relinquish his parental rights to the twin girls so that mother's husband could adopt them. Because mother's husband was in military service, the adoption was to be processed through the office of the Judge Advocate General in Connecticut. After lengthy consideration, father agreed and completed the necessary paperwork, returning it to that office in early 1996.

In July 1996, before the adoption had been completed, mother learned that her husband had molested her two older daughters. She and the children moved out the following day. In November 1996, mother telephoned husband's wife to inform her that things had not worked out in Connecticut and that she was back in Baker City, Oregon, with the twin girls. This was the first notice husband received that the adoption had not been completed.

Mother received some public assistance and, as a result, the state obtained an administrative order requiring father to pay child support. After a telephone hearing, child support was set at $500 per month by the State of Oregon Support Enforcement Division. Father appealed that order.

After a trial *de novo*, the Baker County Circuit Court determined that there was sufficient basis to depart from the Oregon Child Support Guidelines and set the support at $250 per month. Both parties agree that, under the Oregon Child Support Guidelines, the presumed child support obligation of father to mother is $586 per month.

■■ Mother appeals, assigning error to the trial court's finding that there was sufficient basis to depart from the Oregon Child Support Guidelines. To depart from the presumed amount, a court must make a finding that the amount is unjust or inappropriate. A departure finding must be made on the record and include the reason why the order varies from the guidelines amount. ORS 25.280; OAR 137-050-0330(2); *Van Etten and Van Etten*, 158 Or App 122, 125, 972 P2d 1213, *on recons* 159 Or App 421, 980 P2d 1131 (1999). The list of criteria for departure is set forth in subsections (A) through (P) of OAR 137-050-0330(2)(a).[1] *See also*

---

[1] OAR 137-050-0330(2)(a) provides:

"The amount of child support to be paid as determined in subsections (1)(a) through (1)(h) of this rule is presumed to be the correct amount. This presumption may be rebutted by a finding that the amount is unjust or inappropriate based upon the criteria set forth in subsections (2)(a)(A) through (2)(a)(P) of this rule. Both the presumed correct amount and the new amount, in variance from the guidelines, shall be recited as part of findings which explain the reason for the variance.

"(A) Evidence of the other available resources of the parent;

"(B) The reasonable necessities of the parent;

"(C) The net income of the parent remaining after withholdings required by law or as a condition of employment, including, but not limited to the parent's mandatory contribution to a retirement plan as a condition of employment;

"(D) A parent's ability to borrow;

"(E) The number and needs of other dependents of a parent;

"(F) The special hardships of a parent including, but not limited to, any medical circumstances or extraordinary visitation travel related costs, if any, of a parent affecting the parent's ability to pay child support;

"(G) The needs of the child, including, but not limited to extraordinary child care costs due to special needs;

"(H) The desirability of the custodial parent remaining in the home as a full-time parent or working less than full-time to fulfill the role of parent and homemaker;

"(I) The tax consequences, if any, to both parents resulting from spousal support awarded and determination of which parent will name the child as a dependent; the formula presumes the custodial parent will have the tax exemption allowed for the child or children;

ORS 25.280(1)-(1). However, that list is not exclusive, and courts may consider "other nonenumerated economic factors that are relevant to the needs of the dependent child." *Petersen and Petersen*, 132 Or App 190, 198, 888 P2d 23 (1994).

At trial, in reference to the departure criteria, the court stated that if it had to pick a "fudge factor," it would choose "fudge factor F," which is:

"The special hardships of a parent including, but not limited to, any medical circumstances or extraordinary visitation travel related costs, if any, of a parent affecting the parent's ability to pay child support[.]" OAR 137-050-0330(2)(a)(F).

In the Order Amending Child Support Order and Entering Judgment, the court made the following findings to support the departure:

"It is found that the presumed amount of child support is unjust or inappropriate based on the fact that the Petitioner/Obligee represented that the children would be adopted and the Respondent/Obligor signed an agreement to terminate his parental rights and, thereafter, believing that he had no further parental rights, incurred certain reasonable long-term debt which effectively prevents him from paying the full amount of child support as set by the guidelines."

---

"(J) The financial advantage afforded a parent's household by the income of a spouse or another person, or persons, with whom the parent lives in a relationship similar to husband and wife or domestic partnership;

"(K) The financial advantage afforded a parent's household by benefits of employment including, but not limited to, those provided by a family owned corporation or self employment;

"(L) Evidence that a child who is subject to the support order is not living with either parent or is a 'child attending school' as defined in ORS 107.108;

"(M)˙ Prior findings in a Judgment, Order, Decree or Settlement Agreement that the existing support award was made in consideration of other property, debt or financial awards;

"(N) The net income of the parent remaining after payment of financial obligations mutually incurred;

"(O) The tax advantage or adverse tax effect of a party's income or benefits;

"(P) The return of capital."

The court did not specify what long-term debt father had incurred but, at trial, father testified that since signing the adoption papers he had purchased a house, for which the payments are $775 per month, and a truck, for which the payments are $200 per month. Thus, it appears that the trial court based its downward departure on its conclusion that the house and car payments constitute a special hardship for father, in light of the fact that he incurred those debts in reliance on mother's representation that the children would be adopted and his belief that he had terminated his parental rights.

■    Mother argues that the house and car payments are not a special hardship, particularly in this case. We agree. Both house payments and car payments are ordinary expenses that most people have. They do not normally constitute a special hardship. In this case, father makes $3,758 per month, so both payments combined constitute about 25 percent of his gross income, a reasonable amount for such necessities. Furthermore, this debt does not appear to have put father at a financial disadvantage; in fact, it seems to have improved his financial situation. At trial, father testified that the rental payment on a similar three bedroom house "would be probably two to three hundred dollars greater than what [his] mortgage payment is." Therefore, his house and car payments combined are equal to or slightly less than what his rent alone would have been had he not purchased the house.

■    Even if father's recently acquired debt is not a special hardship under OAR 137-050-0330(2)(a)(F), the trial court is not confined to the rebuttal criteria listed in OAR 137-050-0330(2)(a)(A)-(P) to find that the presumed amount of child support is unjust or inappropriate. Here, the trial court found that the fact that father signed an agreement terminating his parental rights at mother's request and therefore believed that he had successfully done so, based on mother's representations that the children would be adopted, makes the presumed amount of child support unjust and inappropriate.

However, to the extent that there is any unfairness in the fact that father is not being allowed to rely on his justified belief that he had terminated his parental rights and

therefore his parental responsibilities, that unfairness is far outweighed by the needs of the children. Not only is "the needs of the child" one of the factors to be considered in determining whether the presumed amount is unjust or inappropriate, ORS 25.280(7) and OAR 137-050-0330(2)(a)(G), that factor is of paramount importance. In *Petersen*, we said that "the obvious intent of ORS 107.105(1)(c) and ORS 25.280 is to provide for an amount of support that is in the *best interest* of the dependent child." 132 Or App at 198 (emphasis added). We also stated that ORS 25.270(4), which is one of the legislative findings for the child support statutes,

> "clearly requires that the determination of child support amounts be based on economic factors that bear on the needs and the best interests of children, and the trial court's authority is circumscribed to that extent." *Id.* at 200.

The trial court here did not address the needs of the children in either its order or its statements at trial. At trial, mother testified that she works out of her home doing network marketing in order to be with her children and that she makes between $150 and $400 per month. She testified that she receives rent subsidies, food stamps and $250 per month in child support for her two older daughters. Thus, the twins are living in a household consisting of a single parent and four children, with an income below the poverty level. Father, on the other hand, testified that his gross income as a journeyman electrician is $3,758 per month. Although father himself is responsible for a household of five, he shares that burden with his wife, who also contributes to the household income. Once the needs of the children in this case are considered, it becomes clear that it is neither unjust nor inappropriate for father to pay the presumed amount of child support under the Child Support Guidelines. The best interests of the children dictate that father be required to pay the full $586 per month.

Reversed and remanded for entry of a judgment amending child support award to $586 per month.