Argued and submitted October 8, 2001, affirmed January 30, 2002

# Bennet Karl LANGLOTZ,
## *Appellant,*

*v.*

# Dan NOELLE,
## Multnomah County Sheriff,
### *Respondent.*

## 0009-09000; A112471

39 P3d 271

Angela V. Langlotz and Kristian Roggendorf argued the cause for appellant. On the briefs was Angela V. Langlotz.

Susan M. Dunaway, Assistant County Attorney, argued the cause for respondent. With her on the brief was Thomas Sponsler, County Attorney for Multnomah County, Oregon.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Plaintiff attempted to apply for a concealed hand-gun license by submitting an application to defendant, the Multnomah County Sheriff. Defendant's deputy refused to accept the application because plaintiff refused to provide some of the information it required. Plaintiff then brought this action seeking a variety of injunctions, declaratory judgments, and damages of $105,000 plus $1,000 per day until he received his license (in order to cover the "approximate cost of an armed security guard"). The trial court denied most of plaintiff's equitable claims and on plaintiff's own motion dismissed his damages claim. Plaintiff appeals from the denial of his claims for declaratory relief. Because the underlying claims and relief sought here are equitable in nature, we review any disputed facts *de novo*, *State Farm Fire v. Sevier*, 272 Or 278, 299, 537 P2d 88 (1975); we review legal issues for errors of law, *Ken Leahy Construction, Inc. v. Cascade General, Inc.*, 329 Or 566, 571, 994 P2d 112 (1999); and we affirm.

Although some facts are disputed, the following are not: On June 27, 2000, plaintiff attempted to obtain a concealed handgun license (CHL) at defendant's office during an appointment scheduled for that purpose. As required by ORS 166.291, he was prepared to submit an application, to allow himself to be fingerprinted and photographed, and to pay the necessary fees. However, in the spaces on the application provided for maiden name and aliases (if any), age, race, sex, work address, "business name," work phone number, non-family character references, their addresses, their phone numbers, and a list of states where he had previously lived, plaintiff put an asterisk and, at the bottom of the second page, explained, "* not required under ORS 166.291 (1-3)." A deputy sheriff refused to accept the application because she deemed it incomplete.

On July 19, 2000, plaintiff sent a certified letter to defendant explaining the various ways in which he considered the county's application form to be "an unwarranted and ultra vires intrusion into the privacy of an applicant." Along with the letter, plaintiff resubmitted his original application,

unchanged, and announced that, if he had not received a license or other satisfactory response by August 3, 2000, he would "consider [his] application to have been rejected" and "be forced to seek judicial review[.]" On August 30, defendant once again refused to accept plaintiff's application, and plaintiff brought this action seeking (among other things not relevant to this appeal) a declaratory judgment that, in demanding certain information on the application for a CHL, defendant exceeded his statutory authority.

The trial court concluded that defendant did not have statutory authority to require applicants to disclose business names, work addresses, and work phone numbers but that, incident to his duty to conduct an investigation of applicants, ORS 166.291(3)(b), he did have authority to require all of the other contested information. Therefore, the trial court concluded, plaintiff had not submitted a properly completed application and defendant's refusal to accept it was lawful. The trial court

> "ordered and adjudged that the [equitable] relief sought by the Plaintiff * * * is denied except that the Sheriff shall change its form to indicate that 'work address', 'business name' and 'work phone number' are optional."

On appeal, plaintiff's sole assignment of error is to the trial court's denial of his claims seeking a declaratory judgment that defendant lacked authority to require applicant to provide maiden name and aliases (if any), age, race, sex, nonfamily character references, his addresses and phone numbers, and a list of states where he had previously lived.

An overview of ORS 166.291, which describes the procedures and criteria for obtaining a CHL from a county sheriff, will provide context for our discussion of the particular subsections at issue in this appeal.

To apply for a CHL from a county sheriff, an applicant must pay specified fees, ORS 166.291(5)(a); submit to being photographed and fingerprinted by the sheriff, ORS 166.291(3)(b); and turn in an application disclosing the applicant's name, address, date and place of birth, hair and eye color, height, weight, and residences for the previous three years, in addition to a statement by the applicant that he or

she meets the objective criteria in ORS 166.291(1)(a)-(L) (age, residence, criminal history, mental health commitment history, etc.), ORS 166.291(3)(a). The parties dispute whether the applicant can be required to disclose additional information. In any event, the application itself must be "uniform throughout the state in substantially the * * * form" of a model provided in ORS 166.291(4). Once the application process is complete, the sheriff "shall conduct any investigation necessary to corroborate [that the applicant meets] the requirements listed under subsection (1)[.]" ORS 166.291(3)(b). If the sheriff concludes that the applicant has complied with the application process and meets the criteria, the sheriff "shall issue the person a concealed handgun license[.]" ORS 166.291(1). However, even if the applicant meets the requirements and performs all the necessary procedures, the sheriff still has discretion to deny a license to any applicant

> "if the sheriff has reasonable grounds to believe that the applicant has been or is reasonably likely to be a danger to self or others, or to the community at large, as a result of the applicant's mental or psychological state, as demonstrated by past pattern of behavior or participation in incidents involving unlawful violence or threats of unlawful violence." ORS 166.293(2).

At the core of this case lies a dispute over two subsections of ORS 166.291. The first is subsection (3), which provides:

> "Before the sheriff may issue a license:
>
> "(a)   The application must state the applicant's legal name, current address and telephone number, date and place of birth, hair and eye color and height and weight. The application must also list the applicant's residence address or addresses for the previous three years. The application must contain a statement by the applicant that the applicant meets the requirements of subsection (1) of this section. The application may include the social security number of the applicant if the applicant voluntarily provides this number. The application must be signed by the applicant."

The second is subsection (4), which provides the model application. Plaintiff reads each of those statutes as limitations of

the information defendant may require of applicants. Defendant argues that subsection (3)(a) provides minimum requirements, leaving defendant discretion to add more, and that subsection (4) permits variations from the model application. We agree with defendant.

According to plaintiff, the language of subsection (3)(a) is unambiguous, and, if not, all conceivable ambiguity is resolved by its context, in particular by subsection (1), which states that in specified circumstances the sheriff "shall issue" the CHL; by subsection (4), which requires substantially uniform applications throughout the state; and by ORS 166.170, which prohibits local governments from regulating firearms. None of those arguments is persuasive.

■ But the plain language of subsection (3)(a), contrary to plaintiff's assertion, simply does not establish that the list of items it requires applicants to provide is complete or exclusive. Had it wanted to write an exclusive list, the legislature could have done so with any of a variety of locutions. It could have begun the subsection with the phrase, "The application must state, *and may only state*, * * *." It could have added a sentence to the end specifying, "The sheriff may not require the application to state any other information." It could have provided a separate subsection explicitly limiting the information the sheriff could require. It did not do so. Standing alone, the language of subsection (3)(a) does not explicitly prohibit the sheriff from requiring information in addition to the listed items. When a statute

> "does not say that the listed criteria are exclusive, we can deem them to be exclusive only if exclusivity is necessary to give effect to the intention of the legislature as expressed in the text and context of the statute." *Petersen and Petersen*, 132 Or App 190, 195, 888 P2d 23 (1994).

That is not the case here. The statute of which subsection (3)(b) is a part contains a model application that demands information *not* listed in (3)(a), including character references and photo identification. In addition, a related statute, ORS 166.295(1)(a), refers to character references as a "requirement" for CHL applications:

> "A concealed handgun license is renewable by repeating the procedures set out in ORS 166.291 and 166.292, except

for the *requirement* to submit fingerprints *and provide character references.*" (Emphasis added.)

Further, the subsection immediately following subsection (3)(a) imposes on sheriffs a requirement to "conduct *any investigation* necessary" to establish that an applicant qualifies. ORS 166.291(3)(b) (emphasis added). In other words, nothing in the text and context of subsection (3)(a) indicates a legislative intention to limit the information a sheriff can demand to those items mentioned in the subsection itself; indeed, the text and context point decisively in the other direction.

Nor does subsection (1) provide any support for plaintiff's theory that subsection (3)(a) states the outermost boundaries of a sheriff's authority to demand information. ORS 166.291(1) provides:

> "The sheriff of a county, upon a person's application for an Oregon concealed handgun license, upon receipt of the appropriate fees and after compliance with the procedures set out in this section, shall issue the person a concealed handgun license if the person [meets certain age, citizenship, training and character qualifications listed in subsections (a)-(L).]"

Plaintiff argues that the "shall issue" language in this subsection combines with the "must state" language in (3)(a) to produce a mandate that the sheriff "shall issue" a CHL whenever an applicant "states" his or her "legal name, current address," etc. Nothing in subsection (1), however, says or even implies that merely supplying that information qualifies an applicant for a CHL. Rather, it requires a sheriff to issue the license if the applicant pays the "appropriate fees," follows the necessary "procedures" (such as being fingerprinted and submitting an application), and the sheriff has determined that the applicant *actually meets* the criteria in (1)(a)-(L). Subsection (3)(a), on the other hand, requires the applicant to provide some basic information and merely *assert* that he or she meets the criteria, thereby triggering the sheriff's mandatory investigation under subsection (3)(b) to "corroborate" that assertion. The "shall issue" language in subsection (1), then, imposes a mandate on the sheriff to issue the CHL when the sheriff is satisfied that the applicant

has met all of the substantive and procedural requirements; it does not establish what those requirements are. Furthermore, even that ostensibly mandatory language is overridden by ORS 166.293, which allows the sheriff to deny an application "notwithstanding" the "shall issue" language of subsection (1) if the sheriff reasonably decides that the applicant has demonstrated dangerous inclinations or conduct.

Nor does the model form in subsection (4) help plaintiff. That subsection provides that CHL applications "shall be uniform throughout the state in substantially the following form," followed by a model application. ORS 166.291(4). Plaintiff argues that the match between the list of items in subsection (3)(a) and the items contained in the model application, combined with the mandate that applications throughout the state shall be substantially uniform, demonstrates that no variation from the model is permitted. To the immediately obvious objection that the statute requires only "substantial" uniformity in "form," plaintiff replies that the word "form" applies to such things as "paper size, layout, font, and style," but not to "substance." The word "form," however, means not only "the shape and structure of something as distinguished from the material of which it is composed," but also "the ideal or intrinsic character of anything[.]" *Webster's Third New Int'l Dictionary*, 892 (unabridged ed 1993).

More to the point, however, the model application requires information not included in subsection (3)(a): character references and two pieces of current identification with photographs. Thus, subsection (4), as noted above, tends to *dis*prove plaintiff's interpretation of subsection (3), not to prove it. If the legislature intended for the items in subsection (3)(a) to be exclusive, it would not have included additional items in the model application form.

Plaintiff attempts to resolve this conundrum by maintaining that, because the character references on the model form appear below the signature block, the legislature intended them to be optional. He offers no authority for this proposition, and we can neither find nor imagine any. And even if there were some such authority, it would not apply in this instance, because another statute in the CHL permit

scheme, ORS 166.295(1)(a), quoted above, expressly refers to character references as a "requirement." The inevitable conclusion is that the model form, if it demonstrates anything, demonstrates that the list in subsection (3)(a) is *not* exclusive.

Finally, ORS 166.170(1) does not help plaintiff. That statute provides:

> "Except as expressly authorized by state statute, the authority to regulate in any manner whatsoever the sale, acquisition, transfer, ownership, possession, storage, transportation or use of firearms * * * is vested solely in the Legislative Assembly."

In enacting the statute that is the subject of this case, ORS 166.291, the legislature has "expressly authorized" defendant to regulate the possession and transportation of concealed firearms. The issue here is whether the manner in which he has chosen to exercise that express authority is consistent with the statutory grant. ORS 166.170(1) does not address that issue.

We therefore conclude that defendant did not exceed his authority under ORS 166.291(3)(a) merely by requiring plaintiff to provide information or statements beyond those mentioned in the subsection.

Plaintiff also relies on subsection (4), not only to reinforce his interpretation of subsection (3)(a) as discussed above, but also as an independent source of affirmative limitation on defendant's authority to require information from applicants. In other words, plaintiff asserts that defendant lacks authority to require any information that is not contained in the model form. The fatal flaw of this argument is that an applicant could completely fill out the model form and still fail to qualify for a CHL under the mandatory minimum list of items in subsection (3)(a). That subsection, for example, requires that the application state the applicant's hair and eye color; the model application in subsection (4) has no place for this information.[1] Further, subsection (3)(a) requires that the application contain a statement by the

---

[1] The 2001 Legislative Assembly added those items to the model form. Or Laws 2001, ch 104, § 56.

applicant that he or she meets the requirements of subsection (1)(a)-(L); the model application in subsection (4) has no place for the applicant to state that he or she is a resident of the county in which the application is taking place (required by subsection (1)(c)) or that the applicant has demonstrated competence with a handgun (required by subsection (1)(f)). Thus, just as the *inclusion* in the model form of material *not listed* in subsection (3)(a) proves that the list in subsection (3)(a) could not be exclusive, so too the *exclusion* of material from the model form of material that is *necessarily included* in satisfactory forms as described in subsection (3)(a) proves that the model form could not contain an exclusive and complete catalog of information that a sheriff may require.

We therefore conclude that neither subsection (3)(a) nor subsection (4) contains an exclusive catalog of information that defendant can require plaintiff to provide. That conclusion, however, merely demonstrates that those particular subsections do not impose affirmative limitations on defendant's authority. It does not demonstrate what authority he does have. In particular, it does not demonstrate whether he has authority to require plaintiff to submit an application that includes the items appearing in neither subsection (3)(a) nor subsection (4): his aliases (if any), age, race, sex, former states of residence, and nonfamily character references with their addresses and phone numbers. To make that determination, we must identify the scope of affirmative grants of authority within the relevant statutes.

The statutes clearly and explicitly confer on defendant a number of duties. He must supply application forms. ORS 166.291(4). He must obtain the information and statement in subsection (3)(a). He must fulfill the "requirement" of obtaining character references. ORS 166.295(1)(a). He must conduct "any investigation necessary" to determine if an applicant meets the objective criteria set out in subsection (1)(a)-(L). ORS 166.291(3)(b). He must register all CHL applicants in the Law Enforcement Data System. ORS 166.291(7). He must then issue a CHL to an applicant whom he determines has met those criteria and who has also paid the necessary fees and followed the necessary procedures such as submitting to fingerprinting and photography, ORS

166.291(1), unless he determines that the applicant is dangerous, as defined in ORS 166.293(2). And he must do all this within 45 days from the date of application. ORS 166.292(1).

Of those grants, the most expansive is the duty to conduct "any investigation necessary" to establish that the applicant has met the requirements of subsection (1). That duty, in turn, carries with it the power to demand information that will facilitate such investigations. *See Oregonian Publishing v. Portland School Dist. No. 1J*, 329 Or 393, 401, 987 P2d 480 (1999) (local governmental entity has authority to gather and compile information necessary to perform its statutory obligation). In other words, although subsection (3)(b) limits the investigations defendant may undertake to those that are "necessary" in order to corroborate the information provided by applicants, in the process of conducting those investigations he may require any such information as will help him in performing that duty. That authority, however, is not unlimited. Because subsection (4) requires substantial uniformity of application forms throughout the state, variations from that form must be minimal. Therefore, we conclude that, to accommodate the affirmative grant of authority to conduct investigations with the express command to minimize variations from the model form and maximize uniformity, defendant's application form may require the applicant to provide, in addition to information expressly required by statute, including the model form, only that information that will substantially and significantly help him conduct the mandatory investigation.

In sum, reading subsection (3)(b) in the context of subsection (4), and vice versa, and both provisions in the context of the entire handgun registration scheme, we reach the following conclusions. First, defendant must require applicants to provide the information in subsection (3)(a), but that subsection does not by its terms prohibit defendant from requiring additional information. Second, defendant must require applicants to provide character references. Third, defendant must provide an application substantially similar to the model application in subsection (4). Fourth, permissible variations from the model include alterations to bring it into conformity with subsection (3)(b) and additions seeking

information that will significantly and substantially help defendant conduct the investigation necessary to determine whether an applicant meets the requirements specified in subsection (1)(a)-(L).

That conclusion is not radically different from the position defendant has taken at trial and on appeal, nor from the judgment that the trial court entered. In this court, plaintiff repeatedly disputes the admissibility of the evidence defendant presented to substantiate his claim that the information he required from plaintiff was, in fact, reasonably necessary for the investigation. However, plaintiff did not object to this evidence below, and we will not consider the objection when it is raised for the first time on appeal. Nor has plaintiff attempted to meet his burden, *Nelson v. Lane County,* 304 Or 97, 101, 743 P2d 692 (1987), to prove that defendant acted unlawfully by requiring unnecessary information. Although it is possible that a subsequent case will provide the occasion to address what information is and is not within a sheriff's authority to require, this is not that case.

Affirmed.